### 1991

HILTON HEAD RESORT FOUR SEASONS CENTER HORIZONTAL PROPERTY REGIME COUNCIL OF CO-OWNERS, INC., plaintiff v. RESORT INVESTMENT CORPORATION, a/k/a Resort Development Corporation; The Hartford Accident and Indemnity Company, L.P. Cox Company of Concord, Inc., L.P. Cox Company, Inc., K.W. Arthur & Son, Inc., Stevens & Wilkinson, Inc., Masonite Corporation, Buford Goff and Associates, King/Guinn and Associates, P.A., Coker Builders, Inc., St. Paul Fire and Marine Insurance Company, Covil Corporation, Johnny T. Johnson and Associates, Inc., now known as Johnson, Knowles, Burgin & Bouknight, Inc., Joseph Rogers, Architectural Design Associates, P.A., and John Watkins, Defendants, of whom Resort Investment Corporation, a/k/a Resort Development Corporation, is Defendant/Respondent, and Coker Builders, Inc., is Third Party Plaintiff/Appellant, and ST. PAUL FIRE AND MARINE INSURANCE COMPANY is Appellant v. DYNAMIT NOBEL OF AMERICA, INC., Crawford Sprinkler Company of South Carolina, Inc., and J.L. Summerlin, Third Party Defendants.

(429 S.E. (2d) 459)

Court of Appeals

*Thomas C. Hildebrand, Jr.* and *Mark E. Rostick*, of *Sinkler & Boyd*, Charleston, *for appellant.*

*Thomas B. Jackson, III*, of *Tyler, Cassell & Jackson*, Columbia, *for defendant/respondent.*

*Russell S. Stemke*, Charleston, *for plaintiff.*

Heard March 17, 1993; Decided April 12, 1993.

Reh. Den. May 17, 1993.

GOOLSBY, Judge:

Coker Builders, Inc., and St. Paul Fire and Marine Insurance Company appeal an order that, among other things, denies their motion to stay a circuit court action pending arbitration and that stays arbitration of their dispute with Resort Investment Corporation, also known as Resort Development

Corporation ("RDC"). The central issue concerns whether the circuit court should have stayed an arbitration proceeding that had been commenced. We affirm.

In 1987, Hilton Head Resort Four Seasons Center Horizontal Property Regime Council of Co-owners, Inc., brought an action in the circuit court against RDC and others. RDC filed a third-party complaint against Coker Builders seeking indemnification.

Coker Builders later moved to stay the action in the circuit court.

Meanwhile, on January 4, 1988, Coker Builders filed with the American Arbitration Association ("AAA") a demand for arbitration directed to RDC. RDC responded by notifying AAA of February 3, 1988 that it planned to contest in the action pending in the circuit court whether RDC's contract with Coker Builders contained an arbitration clause. On February 5, 1988, two days later, RDC returned to AAA a list for the selection of arbitrators mailed to RDC by AAA. RDC, however, expressly conditioned the return of the list on the circuit court requiring arbitration.

The circuit court subsequently required Coker Builders and RDC to arbitrate, but it did so in a verbal order. On March 10, 1988, however, AAA suspended "further administration" of the arbitration proceeding.

On March 2, 1989, the circuit court entered a consent order that dismissed the underlying action without prejudice. It dismissed the action without ever having set forth and entered in the record an order compelling arbitration. Coker Builders was among those consenting to the dismissal of the action. The arbitration that the circuit court had verbally ordered never went beyond the commencement stage.

In August 1989, Hilton Head Resort refiled its action. This time, RDC asserted a cross-claim against Coker Builders and others. It also asserted a third-party complaint against St. Paul, Coker Builders' surety on a performance bond. Coker Builders and St. Paul each alleged arbitration as an affirmative defense.

Coker Builders and St. Paul then filed, among other motions, a motion to stay the circuit court action until the arbitration proceeding that Coker Builders and St. Paul alleged was still pending had been concluded. In response, RDC made

application pursuant to section 15-48-20(b) of the Code of Laws of South Carolina to stay the arbitration proceeding.[1]

After a hearing, the circuit court denied the motion by Coker Builders and St. Paul to stay the action and stayed the arbitration proceeding. In doing so, the circuit court held, citing *Archer v. Long*, 46 S.C. 292, 24 S.E. 83 (1896) and *Bayne v. Bass*, 302 S.C. 208, 394 S.E. (2d) 726 (Ct. App. 1990), it was not bound by any verbal order it might have issued because it had not reduced any such order to writing. *See Bayne*, 302 S.C. at 210, 394 S.E. (2d) at 727 (" 'The [d]ecree must be in writing and until such time the [j]udge may modify, amend or rescind such an oral [o]rder.' ") *(quoting Case v. Case*, 243 S.C. 447, 451, 134 S.E. (2d) 394, 396 (1964)).

The circuit court also expressly found the contract between Coker Builders and RDC contained no arbitration provision and Coker Builders and RDC had not agreed to arbitrate any claims. Neither Coker Builders nor St. Paul appealed these findings.

## I.

Coker Builders and St. Paul contend the circuit court erred in not granting their motion to stay the circuit court action on the ground that the court lacked subject matter jurisdiction because the claims against Coker Builders and St. Paul were then subject to a pending arbitration proceeding. *See Fils et Cables D'Acier de Lens v. Midland Metals Corp.*, 584 F. Supp. 240, 244 (S.D. N.Y. 1984) ("[A] court is precluded from considering any issue that the parties have voluntarily agreed to arbitrate."). This contention, however, assumes the parties had somehow agreed to arbitrate the dispute and it assumes the circuit court had properly ordered arbitration to commence.

As we noted above, the circuit court found Coker Builders and RDC's contract did not contain an agreement to arbitrate and Coker Builders and RDC did not otherwise agree to arbitration. Coker Builders and St. Paul

---

[1] S.C. Code Ann. § 15-48-20(b) (Supp. 1992) provides:

On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when is substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

have not questioned these findings. Where there has been no agreement to arbitrate, a party cannot be forced into compulsory arbitration. *Episcopal Housing Corp. v. Federal Ins. Co.*, 269 S.C. 631, 239 S.E. (2d) 647 (1977).

Aside from any agreement to arbitrate, the circuit court, as we mentioned, did not set forth and did not enter in the record any order that compelled the parties to arbitrate their dispute before it dismissed the first action with the consent of all parties. Without an order for arbitration set forth and entered in the record during the pendency of the action, the parties were not properly required to proceed with arbitration because a final order compelling arbitration never materialized. *See* Rule 58(a), SCRCP ("A judgement is effective only when so set forth and entered in the record."); *First Union Nat'l Bank v. Hitman, Inc.*, 306 S.C. 327, —, 411 S.E. (2d) 681, 682 (Ct. App. 1991), *aff'd,* — S.C. —, 418 S.E. (2d) 545 (1992) ("No order is final until it is written and entered."); *Bayne*, 302 S.C. at 210, 394 S.E. (2d) at 727 (an "'[oral] pronouncement is not a final ruling on the merits'" and it "'[is not] binding upon the parties until it has been reduced to writing, signed by the Judge and delivered for recordation.'") (*quoting Case*, 243 S.C. at 451, 134 S.E. (2d) at 396); 46 Am. Jur. (2d) *Judgments* § 158 at 418 (1969) ("[I]t is sometimes specifically provided by statute or rule of court that a judgment is ineffectual until it is entered . . . and that a judgment is not rendered before it is reduced to a journal entry, or before it is put in writing and entered as a judgment."); *see also State ex rel. Preissler v. Dostert*, 260 S.E. (2d) 279, 284 (W. Va. 1979) ("It is well-settled that a court of record speaks only through its record and anything not appearing on the record does not exist in law.").

Coker Builders and St. Paul argue, however, RDC consented to arbitration by allowing arbitration to commence. They did not make this argument, however, to the circuit court and the circuit court did not rule upon it. We, therefore, cannot consider the issue. *See Rental Uniform Serv. of Greenville, South Carolina, Inc. v. K & M Tool and Die, Inc.*, 292 S.C. 571, 357 S.E. (2d) 722 (Ct. App. 1987) (the court of appeals will not address a question not raised in and passed on by the trial court).

Moreover, the commencement of an arbitration proceeding does not prevent the proceeding from being stayed. Section 15-48-20(b) expressly authorizes a court, on application, to stay "an arbitration proceeding commenced . . . on a showing that there is no agreement to arbitrate." Here, RDC, acting pursuant to section 15-48-20(b) satisfied the circuit court that it had no agreement with Coker Builders and St. Paul to arbitrate. The circuit court clearly had jurisdiction, by virtue of section 15-48-20(b), to stay the "arbitration proceedings commenced" between Coker Builders and RDC.

## II.

Coker Builders and St. Paul also contend RDC is estopped from pursuing any claims against them in the circuit court. Because the circuit court did not address the issue of estoppel in its order and because Coker Builders and St. Paul made no motion pursuant to Rule 59(e), SCRCP to require the circuit court to do so, we are precluded, even assuming coker Builders and St. paul raised the issue, from treating it on appeal. *See Talley v. South Carolina Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 487, 347 S.E. (2d) 99, 101 (1986) (an issue raised but not ruled on by the trial court is not preserved and the complaining party must move before the trial court to amend the judgment pursuant to Rule 59(e), SCRCP); *Rental Uniform Serv. of Greenville, South Carolina, Inc.*, 292 S.C. at 574, 357 S.E. (2d) at 724.

## III.

Similarly, we do not address the issues of laches and waiver. The circuit court did not rule on these issues and Coker Builders and St. Paul made no Rule 59(e) motion to require the circuit court to address these issues. *See Talley*, 289 S.C. at 487, 347 S.E. (2d) at 101; *Rental Uniform Serv. of Greenville, South Carolina, Inc.*, 292 S.C. at 574, 357 S.E. (2d) at 724.

## IV.

We need not address Coker Builder's and St. Paul's argument that the circuit court erred in its alternative holding that the parties must litigate their claims

rather than arbitrate them pursuant to *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed. (2d) 488 (1989) and *Joey Godwin d/b/a Godwin Builders v. Stanley Smith & Sons*, 300 S.C. 90, 386 S.E. (2d) 464 (Ct. App. 1989). The circuit court ordered the arbitration proceeding commenced by the parties stayed primarily because there was no underlying agreement to arbitrate. *See Dwyer v. Tom Jenkins Realty, Inc.*, 289 S.C. 118, 344 S.E. (2d) 886 (Ct. App. 1986) (where unchallenged alternative findings support the judgment, the court of appeals will not address other allegedly erroneous findings).

## V.

We need not address St. Paul's argument concerning whether the action against it ought to be stayed pending arbitration since we hold the circuit court, acting pursuant to section 15-48-20(b), properly stayed the arbitration proceeding commenced by Coker Builders and RDC.

Affirmed.

CURETON, J., concurs.

LITTLEJOHN, Acting Judge, dissents in a separate opinion.

LITTLEJOHN, Acting Judge, dissenting:

I respectfully dissent and would stay the proceedings in the trial court pending arbitration of this matter.

The majority finds that the circuit court had jurisdiction to stay the arbitration proceedings between Coker Builders and RDC because there was no written order in the prior proceeding compelling arbitration.

The majority puts much weight in the fact that there was no written agreement to arbitrate as required by the South Carolina Arbitration Act. However, it is undisputed that arbitration proceedings began in early 1988. RDC failed to object or appeal from the arbitration proceedings. The parties paid an arbitration fee, prepared to pick arbitrators, and requested a change in locale for the arbitration. It is apparent they were prepared to proceed with, and consented to, the arbitration. I would find the above actions manifest the intent to submit

this matter to arbitration and are equivalent to a written agreement to arbitrate.[1]

Furthermore, the fact that the order in the prior proceeding was never educed to writing is not dispositive of the issue. An oral order compelling arbitration was issued by the court and is acknowledged in a letter by then-counsel for RDC. A judge may bind the parties with an oral order dictated into the record. *Lane v. Willianson*, 414 S.E. (2d) 177 (Ct. App. 1992). Once such an order is put into operation, absent a written order contradicting it, the court is bound by it.

Although we are not presented with a transcript of record of the oral order, the record presents evidence of the parties' acknowledgment of the order staying the proceedings in the first action in favor of arbitration. Consequently, I would find that that order was binding on the parties.

Thereafter, because the parties had agreed to arbitrate, the first action was dismissed without prejudice. The court then lost subject matter jurisdiction over that action. The court in the second proceeding could not stay arbitration, which was compelled in the first action, as that would be tantamount to the trial judge overruling the prior trial judge which is improper. Consequently, the court in this action was without jurisdiction to order a stay of arbitration.

For the foregoing reasons, I believe there was an agreement between these parties to arbitrate this dispute. Accordingly, I would reverse the order of the lower court and remand for a stay of proceedings pending arbitration.

---

[1] Moreover, I am not convinced there was no written agreement to arbitrate between the parties. The contract of the parties specifically calls for the use with the contract of an AIA Document A201 containing the general conditions of the contract. In these general conditions is the arbitration clause.

The trial court held that these conditions were not included in the contract because they were not specifically enumerated in the contract documents in Article 7. However, Article 7 refers the parties to Article 1 which lists the contract documents as consisting of this Agreement and includes the Conditions of the Contract.

Unfortunately, Coker did not appeal this finding of the trial court.