588 S.E.2d 617

THE HOUSING AUTHORITY OF The
CITY OF COLUMBIA, Appellant,

v.

CORNERSTONE HOUSING, LLC, Cornerstone Columbia,
LLC, and The American Arbitration Association, Inc.,
Defendants,

Of Whom Cornerstone Housing, LLC, and Cornerstone
Columbia, LLC are, Respondents.

No. 3677.

Court of Appeals of South Carolina.

Heard June 12, 2003.
Decided Sept. 15, 2003.
Rehearing Denied Dec. 3, 2003.

330

Daniel T. Brailsford, of Columbia, for Appellant.

Thomas M. Kennaday and James C. Gray, Jr. both of Columbia, for Respondents.

HOWARD, J.

The Columbia Housing Authority ("CHA") filed this action seeking to enjoin arbitration of its dispute with Cornerstone Housing and Cornerstone Columbia (collectively, "Cornerstone"). In granting Cornerstone's motion to dismiss, the

trial court ordered arbitration to proceed. CHA appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On April 6, 1999, Cornerstone and CHA entered an Indefinite Quality/Service Contract ("the first contract") related to the federally funded revitalization of a public-housing project in Columbia known as Celia Saxon Homes. Under the first contract, Cornerstone agreed to perform certain services for CHA. Both parties contracted to use good-faith efforts to agree upon the terms of the Master Development Agreement ("the second contract"). The first contract contained an arbitration provision as follows:

16. *Resolution of Dispute.* In the event that there is a *bona fide* dispute (*i.e.,* a dispute based upon good faith and sincereness, and without deceit or fraud) between CHA and Consultant/Developer, Consultant/Developer shall nevertheless proceed with performance of the services to be provided and the work to be performed under this Contract, or the Task Order in question, pending the resolution of such dispute. In the event that there is a *bona fide* dispute between CHA and Consultant/Developer in regard to the payment of monies, then those monies which are not in dispute shall nevertheless be paid. This contract is subject to arbitration under S.C.Code ANN 15–48–10, ET SEQ. Both parties may present written evidence to the Arbiter (a duplicate copy of which written evidence shall concurrently therewith be delivered to the other party), and neither party shall consult verbally with the Arbiter without the other party present.

(emphasis as in original).

On July 27, 2000, CHA and Cornerstone entered into the second contract concerning Celia Saxon Homes. The second contract contained the following arbitration provision:

**11.20 Dispute Resolution.** In the event that there is a *bona fide* dispute (i.e., a dispute based upon good faith and sincereness, and without deceit or fraud) between The Authority and the Developer, Developer shall nevertheless proceed with performance of the services to be provided and the work to be performed under this Contract, or the Task

Order in question, pending the resolution of such dispute. In the event that there is a *bona fide* dispute between the Authority and the Developer in regard to the payment of monies, then those monies which are not in dispute shall nevertheless be paid. This contract is subject to binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association. Both parties may present written evidence to the arbitrators (a duplicate copy of which written evidence shall concurrently therewith be delivered to the other party), and neither party shall consult verbally with the arbitrators without the other party present.

(emphasis as in original).

The second contract also contained the following provision related to the United States Department of Housing and Urban Development ("HUD"):

**1.2 Role of HUD.** The parties hereto acknowledge that this Agreement and the closings and the consummation of the transactions contemplated by this Agreement are subject to approval by HUD. The Developer and the Authority agree to cooperate in good faith to obtain all necessary approvals from HUD and acknowledge that approvals from HUD must be obtained as a condition precedent to any obligations contained herein.

(emphasis as in original).

The second contract was sent to HUD for approval. HUD did not approve the contract and required extensive modifications for approval. Subsequently, a dispute arose between Cornerstone and CHA resulting in the termination of any further negotiations related to the second contract. Based on the arbitration agreements contained in the two contracts, Cornerstone filed an arbitration demand with the American Arbitration Association. CHA countered by filing this lawsuit to enjoin arbitration. Cornerstone moved to dismiss the complaint pursuant to Rule 12(b)(6), South Carolina Rules of Civil Procedure. Following a hearing, the circuit court granted Cornerstone's motion to dismiss the lawsuit. CHA appeals.

## STANDARD OF REVIEW

"A trial judge may dismiss a claim when the defendant demonstrates the plaintiff's 'failure to state facts suffi-

cient to constitute a cause of action' in the pleadings filed with the court." *FOC Lawshe Ltd. P'ship v. Int'l Paper Co.,* 352 S.C. 408, 412, 574 S.E.2d 228, 230 (Ct.App.2002) (quoting Rule 12(b)(6), South Carolina Rules of Civil Procedure). "The trial court must dispose of a motion for failure to state a cause of action based solely upon the allegations set forth on the face of the complaint." *Brown v. Leverette,* 291 S.C. 364, 366, 353 S.E.2d 697, 698 (1987). "The motion cannot be sustained if facts alleged in the complaint and inferences reasonably deducible therefrom would entitle plaintiff to any relief on any theory of the case." *Id.* "All properly pleaded factual allegations are deemed admitted for the purposes of considering a motion for judgment on the pleadings." *Int'l Paper,* 352 S.C. at 413, 574 S.E.2d at 230. "Upon review, the appellate tribunal applies the same standard of review that was implemented by the trial court." *Williams v. Condon,* 347 S.C. 227, 233, 553 S.E.2d 496, 500 (Ct.App.2001).

## LAW/ANALYSIS

### I. Agreement to Arbitrate Dispute at Issue

CHA argues the circuit court erred in granting the motion to dismiss and ordering the parties to proceed with arbitration. We disagree.

### A. Existence of Arbitration Agreement

"There is a strong presumption in favor of the validity of arbitration agreements because of the strong policy favoring arbitration." *Towles v. United HealthCare Corp.,* 338 S.C. 29, 37, 524 S.E.2d 839, 844 (Ct.App.1999).

The initial inquiry to be made by the trial court is whether an arbitration agreement exists between the parties. *Towles,* 338 S.C. at 37, 524 S.E.2d at 844–45 ("Arbitration is available only when the parties involved contractually agree to arbitrate."); *see Hooters of America v. Phillips,* 39 F.Supp.2d 582, 609 (D.S.C.1998) (holding issues of "substantive arbitrability" are properly before the trial court and these issues are whether "a valid arbitration agreement exists between the parties and ... [whether] the specific dispute falls within the

substantive scope of the agreement" (quoting *Glass v. Kidder Peabody & Co.,* 114 F.3d 446, 453 (4th Cir.1997))).

■ The determination of whether an arbitration agreement exists is "a matter to be forthwith and summarily tried by the Court." [1] *Jackson Mills, Inc. v. BT Capital Corp.,* 312 S.C. 400, 404, 440 S.E.2d 877, 879 (1994) (internal punctuation omitted); *see Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, ——, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003) (holding that in the absence of clear and unmistakable evidence to the contrary, "courts assume that the parties intended courts, not arbitrators, to decide ... certain gateway matters, such as whether the parties have a valid arbitration agreement at all"); *see also* S.C.Code Ann. § 15–48–20(a) (Supp.2002) (stating if a "party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue" of the existence of the arbitration agreement).

■ Courts "should apply ordinary state-law principles that govern the formation of contracts" in determining whether an agreement to arbitrate exists. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Towles,* 338 S.C. at 37, 524 S.E.2d at 844 (adopting the reasoning of *First Options* ).

In this case, the parties signed two contracts regarding the revitalization of the public-housing project. Each contract contained an arbitration provision that covered disputes aris-

---

1. Neither party asserts the arbitration clause contained "clear and unmistakable evidence" that the parties agreed to have an arbitrator decide the threshold issue of whether an arbitration agreement existed between the parties. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (quoting *AT & T Techs. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986))). Further, a review of the language in both the first and second contracts does not reveal language indicating clear and convincing evidence that the parties intended for an arbitrator to decide the threshold issue of whether a valid arbitration agreement existed. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Havird,* 335 S.C. 642, 646, 518 S.E.2d 48, 50 (Ct.App.1999) (holding clear evidence exists when the language of the agreement between the parties "clearly evinces an intent for the arbitrator" to decide threshold issues). Thus, the issue was properly before the circuit court.

ing between Cornerstone and CHA. *See Jaffe v. Gibbons*, 290 S.C. 468, 472, 351 S.E.2d 343, 345 (Ct.App.1986) ("[W]here both parties have signed a contract, the signing by the first party is in effect his proposal or offer and the signing by the second party is his acceptance thereof; the writing then represents or evidences the bargain between them."). The first contract covered the time period from the contract's signing until the parties entered into the second contract. Specifically, the parties agreed to undertake "good-faith negotiations, with the intention of utilizing each other's best efforts, to enter into [the second contract]." The second contract was to come into full force once HUD approved its provisions.

█ Under South Carolina law, two contracts executed at different times but which relate to the same subject matter and are entered into by the same parties are to be construed as one contract and considered as a whole. *Klutts Resort Realty v. Down' Round Dev. Corp.*, 268 S.C. 80, 88, 232 S.E.2d 20, 24 (1977). Reading the two contracts in this case together, it is evident the parties agreed that any dispute arising after the signing of the first contract was to be arbitrated. *See id.* Therefore, we agree with the circuit court's conclusion that a valid arbitration agreement existed between the parties. *See Jackson Mills*, 312 S.C. at 404, 440 S.E.2d at 879 (holding the determination of whether an arbitration agreement exists is a matter to be summarily tried by the trial court).

## B. Matters Subject to Arbitration

█ The second issue for the trial court to determine in this case was whether "the specific dispute falls within the substantive scope of the [arbitration] agreement." *Phillips*, 39 F.Supp.2d at 609 (holding issues of "substantive arbitrability" are properly before the trial court, including whether a particular dispute is within the scope of the arbitration agreement) (quoting *Glass*, 114 F.3d at 453); *see Bazzle*, 539 U.S. at ——, 123 S.Ct. at 2407 (holding that in the absence of clear and unmistakable evidence to the contrary, "courts assume that the parties intended courts, not arbitrators, to decide . . . certain gateway matters, such as whether [an arbitration agreement] applies to a certain type of controversy"); *see also Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) (holding the question of "whether the parties

have agreed to submit a particular grievance to arbitration" is an issue for judicial determination but that in making such a decision the "court is not to rule on the potential merits of the underlying claims").

■ "To decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause." *Id.* at 597, 553 S.E.2d at 118.

■ Even when the dispute does not arise under the governing contract, the dispute is subject to arbitration when the contract contains a broadly worded arbitration clause and "a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Id.* at 598, 553 S.E.2d at 119 (quoting *Long v. Silver,* 248 F.3d 309, 316 (4th Cir.2001)).

Assuming, *arguendo,* there is a gap in the time period explicitly covered by the contracts [2] containing the arbitration agreements and the disagreement at issue in this case arose during this time period, the dispute is still subject to arbitration.

First, both contracts contained broadly worded arbitration agreements. The first contract stated, "This contract is subject to arbitration under S.C.Code ANN 15–48–10, ET SEQ." The second contract stated, "This contract is subject to binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association."

Second, the subject matter of each contract centered on the revitalization of the housing project. The first contract focused on negotiations to enter into a second binding contract concerning the revitalization. The second contract contained the specific terms of the revitalization effort that was to be approved by HUD.

Finally, the disagreement concerning continued negotiations between the parties after HUD initially declined to approve the terms of the second contract was significantly related to the subject matter of the first and second contracts. Thus,

**2.** Arguably, the time between the parties entering into the second contract and that contract coming into full effect was not covered by either contract.

even if the contracts failed to specifically include the time period when the dispute arose, the dispute at issue is still subject to arbitration. *See Zabinski,* 346 S.C. at 597, 553 S.E.2d at 118 ("[U]nless the court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered.").

## II. Lack of Challenge to Arbitration Agreement

CHA argues the first contract was illegal, and thus, unenforceable, and the second contract did not come into legal force. Because CHA does not directly challenge the arbitration agreement with either of these arguments, we hold the determination of the merits of these issues is reserved for the arbitrator.

"Arbitration clauses are separable from the contracts in which they are imbedded." *Jackson Mills,* 312 S.C. at 403, 440 S.E.2d at 879. "[T]he issue of [the arbitration clause's] validity is distinct from the substantive validity of the contract as a whole." *Munoz v. Green Tree Fin. Corp.,* 343 S.C. 531, 540, 542 S.E.2d 360, 364 (2001) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

"[I]t is only when a party has valid grounds upon which to challenge the arbitration clause itself that arbitration may be avoided." *Jackson Mills,* 312 S.C. at 403–04, 440 S.E.2d at 879; *see South Carolina Pub. Serv. Auth. v. Great Western Coal,* 312 S.C. 559, 562–63, 437 S.E.2d 22, 24 (1993) (holding "a party cannot avoid arbitration through rescission of the entire contract when there is no independent challenge to the arbitration clause").

## A. Illegality of the First Contract

CHA contends the first contract was illegal because Cornerstone was not a licensed contractor under South Carolina Code Annotated section 40–11–370(C) (Supp.2002).[3] Be-

---

**3.** "An entity which does not have a valid license as required by this chapter [relating to licensed contractors] may not bring an action either at law or in equity to enforce the provisions of a contract. An entity that enters into a contract to engage in construction in a name other

cause CHA's argument fails to attack the validity of the arbitration agreement itself, we hold the legality of the first contract is an issue for the arbitrator to decide.

Our supreme court addressed a similar argument in *Munoz*. In *Munoz*, the plaintiff attempted to defeat an arbitration clause in a financing agreement by arguing the South Carolina Consumer Protection Code invalidated the contract and the arbitration clause. In finding the arbitration clause valid, our supreme court stated as follows:

An arbitration clause may be invalidated under a state law only if that law governs the enforceability of all contracts generally. *Perry v. Thomas* [482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ]. The Consumer Protection Code does not govern contracts generally but applies only to certain consumer transactions. While the requirements of the Consumer Protection Code may be raised on the merits of the contract's enforceability as a consumer credit transaction, these requirements do not apply to determine the validity of the arbitration clause itself.

343 S.C. at 540, 542 S.E.2d at 364.

Similarly, in the present case, section 40–11–370(C) only applies to certain construction contracts and does not govern contracts generally. Thus, the arbitration agreement cannot be invalidated based on the requirements of this statute. *See Jackson Mills*, 312 S.C. at 404, 440 S.E.2d at 879 (holding valid grounds to challenge the arbitration agreement itself include claiming "the controversy arose out of events occurring subsequent to expiration of the arbitration agreement itself" and alleging "the arbitration agreement was never entered into"); *see also Zabinski*, 346 S.C. at 592, 553 S.E.2d at 116 ("[T]he [Federal Arbitration Act] will preempt any state law that completely invalidates the parties' agreement to arbitrate."). Further, arbitration is the proper place to raise the issue of statutory licensing requirements as a defense to the enforcement of the contract generally. *See Bazzle*, 539 U.S. at ——, 123 S.Ct. at 2407 (holding that except for "certain gateway matters, such as whether the parties have a

---

than the name that appears on its license may not bring an action either at law or in equity to enforce the provisions of the contract." Section 40–11–370(C).

valid arbitration agreement," the parties to an arbitration agreement have agreed that an arbitrator would decide disputes covered by the agreement).

Notwithstanding *Munoz*, CHA contends Cornerstone's violation of the statute made the first contract illegal. However, even if the overall contract is unenforceable, the arbitration provision is not unenforceable unless the reason the overall contract is unenforceable specifically relates to the arbitration provision. *See Jackson Mills*, 312 S.C. at 403–04, 440 S.E.2d at 879 (holding arbitration cannot be avoided when a party opposed to arbitration alleges only a problem with the contract as a whole but not with the arbitration agreement itself).

In this case, CHA's claim of illegality goes to the contract generally and not the arbitration provision specifically. Because the defense of illegality relates to the contract as a whole, the arbitration provision is still in force and the illegality defense can be considered at the arbitration itself. *See Bazzle*, 539 U.S. at ——, 123 S.Ct. at 2407; *Phillips*, 39 F.Supp.2d at 609 (holding all issues raised before a trial court not relating to whether "a valid arbitration agreement exists between the parties" or whether "the specific dispute falls within the substantive scope of the agreement ... fall within the ambit of 'procedural arbitrability,' and are within the jurisdiction of the arbitrator" (quoting *Glass*, 114 F.3d at 453)).

## B. Legal Force of the Second Contract

CHA contends the second contract was never in legal force. Because CHA's argument does not specifically attack the arbitration agreement, we hold that the enforceability of the second contract is an issue for the arbitrator to determine.

The United States Supreme Court addressed a similar argument in *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801. In *Prima Paint*, the party who opposed arbitration alleged it was fraudulently induced to enter into the contract in which the arbitration agreement was located. No independent challenge to the arbitration agreement was made. In affirming the trial court's decision to dismiss a motion to enjoin arbitration, the Court stated as follows:

[S]ave for the existence of an arbitration clause, the ... court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the ... court may proceed to adjudicate it. But the ... court [may not] consider claims of fraud in the inducement of the contract generally.

*Id.* at 403–04, 87 S.Ct. 1801 (internal punctuation marks as in original); *see Great Western Coal,* 312 S.C. at 562–63, 437 S.E.2d at 24 (adopting the reasoning of *Prima Paint* ).

Similarly, CHA argued a problem existed with the second contract but made no independent argument regarding the arbitration agreement. Because the second contract had a provision requiring HUD approval of the contract prior to its provisions having legal effect, CHA argued the contract was not in force. However, this argument attacked the second contract without specifically attacking the arbitration agreement. *See Jackson Mills,* 312 S.C. at 404, 440 S.E.2d at 879 (holding valid grounds to challenge the arbitration agreement itself include claiming "the controversy arose out of events occurring subsequent to expiration of the arbitration agreement itself" and alleging "the arbitration agreement was never entered into"). Further, the language of the HUD-approval clause spoke to the contract generally but did not specifically address the arbitration agreement.

Thus, CHA cannot avoid arbitration with this argument because it failed to allege an independent challenge to the validity of the arbitration agreement. *See id.* at 403–04, 440 S.E.2d at 879 (holding when a party opposed to arbitration alleges only a problem with the contract as a whole but not with the arbitration agreement itself then arbitration cannot be avoided); *see Phillips,* 39 F.Supp.2d at 609 (holding all issues raised before a trial court not relating to whether "a valid arbitration agreement exists between the parties" or whether "the specific dispute falls within the substantive scope of the agreement ... fall within the ambit of 'procedural arbitrability,' and are within the jurisdiction of the arbitrator" (quoting *Glass,* 114 F.3d at 453)).

Further, since the failure to obtain HUD approval of the second contract is a defense to the contract generally and not to the arbitration agreement specifically, arbitration is the proper place to raise the defense. *See Bazzle,* 539 U.S. at ——, 123 S.Ct. at 2407 (holding that except for "certain gateway matters, such as whether the parties have a valid arbitration agreement," the parties to an arbitration agreement have agreed that an arbitrator would decide disputes covered by the agreement).

## CONCLUSION

Based on the foregoing reasons, the decision of the circuit court is

**AFFIRMED.**

BEATTY and JEFFERSON, Acting Judges, concur.