667 S.E.2d 1

**NEW HOPE MISSIONARY BAPTIST CHURCH, Respondent,**

v.

**PARAGON BUILDERS, and Kenneth W. Rose, Defendants,**

**of whom Paragon Builders is the Appellant.**

No. 4433.

Court of Appeals of South Carolina.

Submitted May 1, 2008.

Decided Aug. 27, 2008.

---

622

James Mixon Griffin, of Columbia, for Appellant.

Philip E. Wright, of Lancaster, for Respondent.

THOMAS, J.

Paragon Builders appeals the trial court's denial of its motion to compel arbitration or dismiss the complaint of New Hope Missionary Baptist Church. We reverse.[1]

## FACTS

Paragon Builders, L.L.C. of Orangeburg, South Carolina, signed a contract with New Hope Missionary Baptist Church (Church) on or between September 30 and October 3, 2004. The two-page Contract was entitled a "Construction Management Agreement" wherein Paragon Builders avowed to help bring the construction of a new church facility "online" by working as "the chief construction advisor." Under the Contract, Paragon Builders pledged to work with the Church's architect in North Carolina, appointed church leaders, state and local building inspectors, local city and county govern-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

ments, utilities, bankers and others associated with the project.

Article 2 of the Contract, entitled "Time of Completion," contained an arbitration clause stating, "[a]ll disputes hereunder shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association." The Contract also provided that the Church would pay Paragon Builders twenty-five thousand dollars ($25,000) but that "if for any reason this project is not constructed by Paragon Builders all money will remain with the contractor" and the Church "will not receive any funds back." Payment of the entire $25,000 amount was due at the signing of the Contract.

The Contract was signed by Kenny W. Rose and Emoray R. Waiters, allegedly on behalf of the Church.[2] At some point, a payment of twenty-five thousand dollars was made from Church funds to Paragon Builders. Thereafter, the Church filed a declaratory judgment action asking the court to determine the existence, validity, and enforceability of the Contract.

The Church's complaint raised numerous issues regarding the validity of the Contract, including the absence of any meeting of the minds, Paragon Builders' lack of consideration, and the ambiguity of the Contract with regard to Paragon Builders' obligations. The Church asserted the $25,000 payment and ensuing deposit were not authorized by the Church but was "the misguided action of the church financial secretary acting *ex officio*." The complaint prayed for a refund of the $25,000 payment.

The complaint contended neither Rose[3] nor Waiters was a "trustee[ ] of the church nor were they authorized by the church to enter into any such contract." Waiters' signature was also claimed to be a forgery. The Church contended the

---

2. In the Record on Appeal, a single page bearing twenty-eight signatures has been attached to the Contract. The page bears no identifying marks or explanation regarding the identity of the twenty-eight signatories or why twenty-eight individuals signed the blank sheet of paper.

3. The Church further explained that although Rose was the pastor when the Contract was signed, there was an ongoing dispute with Rose at that time, and "ninety-nine percent of the activity that related to this Contract took place directly between the pastor and the contractor," without any information being relayed to the Church.

signatures on a blank page attached to the Contract were "simply a list of people who attended a meeting regarding the contract" and did not constitute a signature page which was part of the Contract. The Church asserted the Contract "was not approved by any vote of the church or any authorized committee or organization of the church" and as such does not bind the Church.

Paragon Builders timely answered denying the Church was entitled to a declaratory judgment or a refund. The Answer also pled an affirmative defense pursuant to Rule 12(b)(6), SCRCP, that the Church failed to state a claim upon which relief can be granted, and that the Church's claims were subject to arbitration under the Contract.

On July 3, 2006, Paragon Builders filed a Motion to Compel Arbitration and Dismiss or Stay the Complaint. The motion was heard on October 9, 2006, and subsequently denied. The trial court held, "[u]nder the Federal Arbitration Act and S.C.Code Ann. § 15–48–10, before arbitration may be compelled, there must be a determination that there was an agreement between the parties," and this was the very issue the Church contested. The trial court further held, "until there is a determination by the Court as to whether or not the parties had an agreement, arbitration cannot be compelled." Paragon Builders now appeals.

## STANDARD OF REVIEW

Unless the parties otherwise provide, the question of the arbitrability of a claim is an issue for judicial determination. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). Appeal from the denial of a motion to compel arbitration is subject to de novo review. *Chassereau v. Global Sun Pools, Inc.*, 373 S.C. 168, 171, 644 S.E.2d 718, 720 (2007). Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Thornton v. Trident Med. Ctr., L.L.C.*, 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct.App.2003).

## LAW/ANALYSIS

Paragon Builders claims the trial court erred in denying its Motion to Compel Arbitration brought pursuant to Section 15–

48–20(a) of the South Carolina Code (2005). Specifically, Paragon Builders asserts the Contract's arbitration clause requires disputes arising out of the Contract be resolved through arbitration. Pursuant to *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and *The Housing Authority of City of Columbia v. Cornerstone Housing, L.L.C.*, 356 S.C. 328, 588 S.E.2d 617 (Ct.App.2003), we find the trial court erred in denying Paragon Builders' Motion to Compel Arbitration since the Church failed to specifically challenge the arbitration agreement.

Section 15–48–10(a) of the South Carolina Code (2005) states, "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Legislature also provided that:

> On application of a party showing an [arbitration] agreement described in § 15–48–10, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

S.C.Code Ann. § 15–48–20(a) (2005). An order denying a motion to compel arbitration [4] made under Section 15–48–20 is immediately appealable. S.C.Code Ann. § 15–48–200(a)(1) (2005); *Towles v. United HealthCare Corp.*, 338 S.C. 29, 35, 524 S.E.2d 839, 842–43 (Ct.App.1999).

██ As a preliminary note, we find the trial court properly determined the Federal Arbitration Act ("FAA") applies to the arbitration agreement in this matter since the parties did not contract to the contrary and the arbitration agreement pertains to a transaction involving interstate commerce due to the nature of the construction project, Paragon Builders'

---

4. This court also recently dealt with a motion to compel arbitration in *Partain v. Upstate Automotive Group*, 378 S.C. 152, 662 S.E.2d 426 (2008) (Shearouse Adv. Sh. No. 16 at 69).

position as chief construction advisor, and Paragon Builders' affidavit swearing the project will involve businesses and supplies from outside South Carolina. *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538–39, 542 S.E.2d 360, 363 (2001) ("Unless the parties have contracted to the contrary, the FAA applies in federal or state courts to any arbitration agreement regarding a transaction that in fact involves interstate commerce, regardless of whether or not the parties contemplated an interstate transaction."); *Episcopal Hous. Corp. v. Federal Ins. Co.*, 269 S.C. 631, 640, 239 S.E.2d 647, 652 (1977) ("It would be virtually impossible to construct an eighteen (18) story apartment building between 1971 and 1973 with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina."); *Blanton v. Stathos*, 351 S.C. 534, 540–41, 570 S.E.2d 565, 568–69 (Ct.App. 2002) (holding Blanton's affidavit asserting the contract affected interstate commerce, Stathos's failure to dispute the affidavit, and the nature of the construction project were sufficient to uphold the decision of the circuit court that the contract evinces a transaction involving interstate commerce); *Towles*, 338 S.C. at 36, 524 S.E.2d at 843 ("Because interstate commerce is involved, the FAA applies and displaces South Carolina's Uniform Arbitration Act.") (citing *Soil Remediation Co. v. Nu–Way Envtl., Inc.*, 323 S.C. 454, 459–60, 476 S.E.2d 149, 152 (1996)).

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001); *Aiken v. World Fin. Corp. of S. C.*, 373 S.C. 144, 149, 644 S.E.2d 705, 708 (2007); *Chassereau v. Global Sun Pools, Inc.*, 373 S.C. 168, 171–72, 644 S.E.2d 718, 720 (2007). Since the Church contends a valid, enforceable contract does not exist, this is no doubt one reason why the trial court denied Paragon Builders' Motion to Compel Arbitration until the court could determine whether or not the parties had an agreement. However, further examination of case law from the United States Supreme Court and the South Carolina Supreme Court yields the surprising result that when a party argues fraud in the inducement of an entire contract, but not the arbitration agreement itself, arbitration cannot be avoided. *Prima Paint,*

388 U.S. 395, 87 S.Ct. 1801; *S.C. Pub. Serv. Auth. v. Great Western Coal, Inc.,* 312 S.C. 559, 437 S.E.2d 22 (1993); *Jackson Mills, Inc. v. BT Capital Corp.,* 312 S.C. 400, 440 S.E.2d 877 (1994); *Cornerstone Hous.,* 356 S.C. 328, 588 S.E.2d 617 (Ct.App.2003).

██   In *Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. 1801, the United States Supreme Court held that general allegations of fraud in the inducement of a contract are insufficient to prevent the invocation of a contract's arbitration clause.   The court referenced Section 4[5] of the FAA and concluded that with respect to cases evidencing transactions in commerce:

> if the claim is fraud in the inducement[6] of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it ... [b]ut the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

388 U.S. at 403–04, 87 S.Ct. 1801.   In *Great Western Coal, Inc.,* 312 S.C. at 562–63, 437 S.E.2d at 24 (emphasis added), the South Carolina Supreme Court explained how the rule of *Prima Paint* should be applied by our courts:

> We join the jurisdictions which have rejected limiting the holding in *Prima Paint.*   We hold a party cannot avoid arbitration through rescission of the entire contract when there is no independent *challenge to the arbitration clause.* Fraud as a defense to an arbitration clause must be fraud

---

**5.** Section 4 provides in part, "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement ... [i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C.A. § 4 (2008).

**6.** The Church's complaint and brief to this court set forth arguments such as, an absence of any meeting of the minds, a lack of the signatories' ability to bind the Church, forgery, and failure of the Church to approve the Contract, all of which deal with fraud in factum, i.e., ineffective assent to the Contract. *Great Western Coal,* 312 S.C. at 562, 437 S.E.2d at 24.

specifically as to the arbitration clause and not the contract generally.

A party may allege the arbitration agreement was never entered into and "under such circumstances, a challenge to the existence of the arbitration agreement itself becomes a matter to be 'forthwith and summarily tried' by the Court." *Jackson Mills*, 312 S.C. at 404, 440 S.E.2d at 879 (citations omitted).

In its complaint, at the hearing, and in its brief to this court, the Church does not specifically allege the arbitration clause in the Contract is invalid, unenforceable, or does not exist. Instead, the Church argues it has numerous grounds on which *the Contract* is invalid and that "the Contract simply does not exist as a Contract" in part because of Rose's inability to bind the Church.

We acknowledge the United States Supreme Court has identified certain limited circumstances in which "courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clear and unmistakable' evidence to the contrary)." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). These "gateway matters" include whether the parties have a valid arbitration agreement or whether a binding arbitration clause applies to a certain type of controversy. *Id.* However, in the present case we are not confronted with the question of whether an arbitration agreement encompasses a certain dispute [7] or whether the arbitration agreement is invalid. Instead, we have been presented with the question of whether arbitration should be compelled when a contract's validity has been challenged.

Common sense implies that if a party challenged the validity of a contract which contained an arbitration clause,

---

7. "Determining whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Towles*, 338 S.C. at 41, 524 S.E.2d at 846. Whether a particular claim is subject to arbitration has been examined in many cases, including, *Aiken*, 373 S.C. 144, 644 S.E.2d 705; *Chassereau*, 373 S.C. 168, 644 S.E.2d 718; *Zabinski*, 346 S.C. 580, 553 S.E.2d 110; *Timms v. Greene*, 310 S.C. 469, 427 S.E.2d 642 (1993); *Vestry & Church Wardens of the Church of the Holy Cross v. Orkin Exterminating Co.*, 356 S.C. 202, 588 S.E.2d 136 (Ct.App.2003). This issue is not presently before the court.

the validity of the arbitration clause is also challenged. The courts have found otherwise. "Arbitration clauses are separable[8] from the contracts in which they are imbedded." *Jackson Mills,* 312 S.C. at 403, 440 S.E.2d at 879 (citing *Prima Paint,* 388 U.S. at 402, 87 S.Ct. 1801). An arbitration clause's validity is distinct from the substantive validity of the contract as a whole. *Cornerstone Hous.,* 356 S.C. at 338, 588 S.E.2d at 622 (citing *Munoz,* 343 S.C. at 540, 542 S.E.2d at 364). "Even if the overall contract is unenforceable, the arbitration provision is not unenforceable unless the reason the overall contract is unenforceable specifically relates to the arbitration provision." *Cornerstone Hous.,* 356 S.C. at 340, 588 S.E.2d at 623.

The policies of the United States and this State favor arbitration of disputes. *Stokes v. Metropolitan Life Ins. Co.,* 351 S.C. 606, 610–11, 571 S.E.2d 711, 713–14 (Ct.App. 2002); *Tritech Elec., Inc. v. Frank M. Hall & Co.,* 343 S.C. 396, 399, 540 S.E.2d 864, 865 (Ct.App.2000) (citation omitted); *Towles,* 338 S.C. at 37, 524 S.E.2d at 844. "The FAA was designed 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate.' " *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (citation omitted). The Church's argument that the entire Contract is invalid can be considered at the arbitration itself. *Cornerstone Hous.,* 356 S.C. at 340, 588 S.E.2d at 623; *see Bazzle,* 539 U.S. 444, 453, 123 S.Ct. 2402 (noting arbitrators are well

---

8. In *Simpson v. MSA of Myrtle Beach, Inc.,* 373 S.C. 14, 644 S.E.2d 663 (2007), the South Carolina Supreme Court recently noted that severability is not always an appropriate remedy for an unconscionable provision in an arbitration clause especially in situations where " 'illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts.' " 373 S.C. at 34, 644 S.E.2d at 673. This situation is not presently before us since the Church has made no claims regarding the unconscionability of its Contract with Paragon Builders. The supreme court emphasized the importance of a case-by-case analysis to address unique circumstances surrounding the evaluation of an arbitration clause for unconscionability and further distinguished *Simpson* from cases such as the one *sub judice* by holding the arbitration clause in *Simpson* is unconscionable due to a multitude of one-sided terms. *Id.* at 36, 644 S.E.2d at 674.

suited to address issues such as contract interpretation and arbitration procedures).

We further acknowledge that "where there has been no agreement to arbitrate, a party cannot be forced into compulsory arbitration." *Hilton Head Resort Four Seasons Ctr. Horizontal Prop. Regime Council v. Resort Inv. Corp.,* 311 S.C. 394, 397–98, 429 S.E.2d 459, 462 (Ct.App.1993) (citation omitted). Again, precedent forces a distinction to be drawn between disputes in which a party challenges the arbitration agreement itself and disputes in which only the overall contract is challenged. *See Simpson v. MSA of Myrtle Beach, Inc.,* 373 S.C. 14, 23–24, 644 S.E.2d 663, 668 (2007) (holding the trial court was the proper forum for determining the enforceability of the arbitration clause in the contract because "[a]lthough the clause specifically stated that arbitration applied to issues involving 'the validity and scope of this contract,' Simpson challenged the validity of the arbitration provision on grounds of unconscionability, bringing into question whether an arbitration agreement even existed in the first place"); *Cornerstone Hous.,* 356 S.C. at 338–42, 588 S.E.2d at 622–24 (holding because a party did not directly challenge the arbitration agreement in either of the two contracts, the legality and enforceability of the contracts is an issue for the arbitrator to decide). Indeed, even Section 15–48–20(a) of the South Carolina Code (2005) notes when a party presents a court with an arbitration agreement and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration unless "the opposing party denies the existence of the *agreement to arbitrate.*" S.C.Code Ann. § 15–48–20(a) (2005) (emphasis added). Unlike the cases argued by the Church, the matter presently before us does not raise the issue of whether the arbitration clause in Article 2 of the Contract is invalid. Accordingly, the order of the trial court is

**REVERSED.**

WILLIAMS, J., concurs.

PIEPER, J., dissents in a separate opinion.

PIEPER, J., dissenting.

I respectfully dissent. In my opinion, this case involves more than a situation where a party alleges fraud in the inducement of just the contract itself, as opposed to challenging the arbitration provision of the contract. I believe the Church has raised a colorable claim that there was no arbitration agreement by alleging the signer of the agreement had neither the authority to agree to the contract itself, nor the authority to agree to the arbitration provision.

I fully support the policy in favor of arbitration and will not resort to citation of the law in this regard. I believe the majority opinion fully recounts the applicable law. However, the majority notes that where there has been no agreement to arbitrate, a party cannot be forced to do so. I believe further clarification of the law in this area is necessary. Based on the facts of this case, I find it very problematic that a person, without authority, may set out to not only bind another to a contract, but also to arbitration without the right to do so, and without a preliminary court determination on the issue of the authority to bind (i.e. the existence of the agreement to arbitrate). Under the facts herein, I respectfully believe this case falls within that type of "gateway matter" ripe for a judicial determination as to the existence of the agreement to arbitrate. *See Simpson v. MSA of Myrtle Beach, Inc.,* 373 S.C. 14, 22, 644 S.E.2d 663, 667 (2007) (stating where one party denies the existence of an arbitration agreement raised by an opposing party, a court must immediately determine whether the agreement exists in the first place); *see also* 9 U.S.C.A. § 4 (2008) (wherein the Federal Arbitration Act directs the court to summarily determine the existence of the arbitration agreement if it is at issue); *accord* S.C.Code Ann. § 15–48–20(a) (2005).

Moreover, the circuit court did not rule that arbitration may not eventually result; instead, the court concluded that a preliminary and threshold determination must be made about the existence of an agreement to arbitrate. Once that threshold determination is made, I do not read the court's order as precluding arbitration if the issue as to the authority to enter the agreement to arbitrate is determined adversely to the

Church.  Therefore, I agree with the assertion by the Church in its brief that the appeal is premature.

Accordingly, I would affirm.