575 S.E.2d 74

**Carol H. EVANS, Respondent,**

v.

**ACCENT MANUFACTURED HOMES, INC., d/b/a Accent Mobile Homes; Doug Perkins and Fleetwood of Homes of Virginia, Inc., Defendants,**

**Of whom Accent Manufactured Homes, Inc., d/b/a Accent Mobile Homes is, Appellant.**

No. 3583.

Court of Appeals of South Carolina.

Heard Dec. 10, 2002.

Decided Jan. 6, 2003.

M.M. Weinberg, Jr., and M.M. Weinberg, III, both of Sumter; and Michael P. Horger of Orangeburg, for Appellant.

A.F. Carter, III, and Cynthia Bailey Berry, both of Orangeburg, for Respondent.

ANDERSON, J.:

Accent Manufactured Homes, Inc., d/b/a Accent Mobile Homes ("Accent") appeals a circuit court order denying its motion to dismiss and compel arbitration, arguing the circuit court erred in finding Accent waived its right to compel arbitration. We affirm.

### FACTS/PROCEDURAL BACKGROUND

Carol H. Evans negotiated with Accent to purchase a mobile home in the summer of 1997. Accent agreed that if it sold Evans a mobile home, it would make specific modifications to the mobile home to accommodate her disabled son's special needs related to his blindness, cerebal palsy, spastic quadripalegia, and mental retardation. It further agreed to deliver and set up the mobile home, with the modifications complete, within time constraints specified by Evans.

The contract Evans and Accent entered into for the mobile home contained an express warranty against defects in materials and workmanship. It also included the following language:

ARBITRATION: All disputes, claims or controversies arising from or relating to this Contract or the parties thereto

shall be decided by binding arbitration by one arbitrator selected by [Evans] with [Accent's] consent. This agreement is made pursuant to a action [sic] in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

An "Arbitration Agreement" contemporaneously executed with the contract provided more detailed terms governing the arbitration of disputes between the parties.

Accent delivered the mobile home on September 22, 1997. Following delays related to the set up of the mobile home, Evans first moved into the home on October 18, 1997.

In June 1998, Evans sued Accent for breach of express warranty, breach of implied warranty of fitness, negligence, and fraud.[1] She alleged Accent failed to provide numerous items specified in their agreement, including utility room cabinets, a remote-controlled garage door, and a larger bathtub to accommodate her son's therapy. She professed numerous defects in the mobile home, including leaks, holes in garage sheetrock, cracked kitchen tiles, inadequate grouting, a hole in the bedroom wall, and numerous scratches. Additionally, she asserted the two halves of the mobile home were not properly joined, the ductwork was poorly installed, which resulted in heating problems, the refrigerator door was defective, and sand and debris were in her water.

Accent answered in August 1998, generally denying her causes of action for breach of implied warranty for fitness, negligence, and fraud. It argued it remedied problems for which she claimed a breach of express warranty, but contended it had not satisfied her request for a larger bathtub due to her alleged failure to cooperate with the selection of an appropriate bathtub. It averred it remedied all other defects for which it was responsible, and any remaining defects were the responsibility of Fleetwood Homes of Virginia, Inc., the mobile home's manufacturer. Accent's answer contained no mention of the option of arbitration.

---

1. Evans also sued Accent's sales manager, Doug Perkins, and her mobile home's manufacturer, Fleetwood Homes of Virginia, Inc. Neither is a party to this appeal.

Discovery began in August 1999, when Accent served Evans with a set of interrogatories. Evans answered the interrogatories in November 1999.

The case first appeared on the circuit court's trial roster in December 1999. Accent continued discovery by serving Evans with a request to produce documents pursuant to Rule 34 of the South Carolina Rules of Civil Procedure.

Accent made a motion to the court seeking to dismiss Evans's action in January 2000. It sought to compel arbitration pursuant to their contract's provisions.

In February 2000, Evans subpoenaed an Accent employee with whom she had dealt when purchasing the mobile home. The subpoena required the employee to give his deposition at a specified time and place in March 2000. Accent did not seek an order of protection from the court to avoid the deposition of its employee. Instead, Accent noticed Evans that it wanted to take her deposition on the same date when she planned to take Accent's employee's deposition. Depositions of the employee and Evans were taken on March 6, 2000.

Evans served Accent with interrogatories on March 2, 2000 and supplemental interrogatories the next month. Accent answered the interrogatories in June 2000. Evans served Accent with a request for the production of documents in April 2000, which Accent answered in June 2000.

On March 29, 2000, the circuit court conducted a hearing on Accent's dismissal motion. Accent moved to dismiss the case so that it could be arbitrated pursuant to the arbitration provision in the contract and the arbitration agreement contemporaneously signed with the contract.

Evans countered that Accent knew of its right to arbitrate when litigation began, but waived the right by taking advantage of the judicial system by engaging in discovery. She claimed that Accent's failure to seek arbitration for approximately nineteen months after she initiated her action prejudiced her because of the time delay. She argued Accent's initiation and use of discovery, unavailable in arbitration, further prejudiced her.

In a May 2000 order, the circuit court denied Accent's motion. It found Accent waived its right to arbitrate by

failing to seek arbitration for nineteen months after the action commenced even though it knew of its right to arbitrate. The circuit court found Evans suffered prejudice from Accent's pursuit of discovery to which it would not have been entitled under arbitration, causing her to incur "substantial costs."

## ISSUE

Did the circuit court err in finding Accent waived its contractual right to compel arbitration?

## STANDARD OF REVIEW

 "The question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) (citing *AT & T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Whether a party waived its right to arbitrate is a legal conclusion subject to *de novo* review. *Liberty Builders, Inc. v. Horton*, 336 S.C. 658, 664, 521 S.E.2d 749, 753 (Ct.App.1999); *General Equip. & Supp. Co. v. Keller Rigging & Constr., SC, Inc.*, 344 S.C. 553, 556, 544 S.E.2d 643, 645 (Ct.App.2001); *see U.S. v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001); *Stokes v. Metropolitan Life Ins. Co.*, 351 S.C. 606, 571 S.E.2d 711 (Ct.App.2002). Nevertheless, the circuit court's factual findings underlying that conclusion will not be overruled if reasonably supported by any evidence. *Liberty Builders, Inc.*, 336 S.C. at 664–65, 521 S.E.2d at 753; *Stokes*, 351 S.C. at 609–10, 571 S.E.2d at 713.

## LAW/ANALYSIS
## CONTRACTUAL ARBITRATION/WAIVER

Accent contends the trial court erred in finding it waived its contractual right to compel arbitration. We disagree.

The parties do not challenge that their agreement contains provisions mandating arbitration of disputes between the parties. Furthermore, Accent does not contest that it knew about its right to arbitrate under the agreement throughout the entire course of litigation and discovery, but failed to

exercise its right until approximately nineteen months after Evans commenced litigation.

"Arbitration laws are passed in order to expedite the settlement of disputes and should not be used as a means of furthering and extending delays...." 4 Am.Jur.2d *Alternative Dispute Resolution* § 131 (1995). "A party may waive the right to arbitration by being unjustifiably slow in seeking arbitration." *Id.* at § 129. Hence, generally the right to enforce an arbitration clause may be waived. *General Equip. & Supply Co. v. Keller Rigging & Constr., SC, Inc.,* 344 S.C. 553, 556, 544 S.E.2d 643, 645 (Ct.App.2001); *Hyload, Inc. v. Pre–Engineered Prods., Inc.,* 308 S.C. 277, 280, 417 S.E.2d 622, 624 (Ct.App.1992); 6 C.J.S. *Arbitration* § 37 (1975). A party seeking to establish waiver must show prejudice through an undue burden caused by delay in demanding arbitration. *Sentry Eng'g & Constr., Inc. v. Mariner's Cay Dev. Corp.,* 287 S.C. 346, 351, 338 S.E.2d 631, 634 (1985); *General Equip. & Supply Co.,* 344 S.C. at 556, 544 S.E.2d at 645; *Liberty Builders, Inc. v. Horton,* 336 S.C. 658, 665, 521 S.E.2d 749, 753 (Ct.App.1999). "Mere inconvenience to an opposing party is not sufficient to establish prejudice, and thus invoke the waiver of right to arbitrate." *General Equip. & Supply Co.,* 344 S.C. at 557, 544 S.E.2d at 645. "There is no set rule as to what constitutes a waiver of the right to arbitrate; the question depends on the facts of each case." *Liberty Builders, Inc.,* 336 S.C. at 665, 521 S.E.2d at 753, *Hyload, Inc.,* 308 S.C. at 280, 417 S.E.2d at 624. Furthermore, the policy in South Carolina is to favor arbitration of disputes. *Heffner v. Destiny, Inc.,* 321 S.C. 536, 537, 471 S.E.2d 135, 136 (1995); *Towles v. United Healthcare Corp.,* 338 S.C. 29, 34, 524 S.E.2d 839, 842 (Ct.App.1999).

Accent argues that no evidence supports the trial court's finding that Evans suffered prejudice from its delay in seeking arbitration. Accent likens the facts in the present case to those in *General Equipment & Supply.* In *General Equipment & Supply,* this court found no evidence of prejudice from delay in demanding arbitration where a party sought arbitration after less than eight months of litigation which "consisted of routine administrative matters and limited discovery which did not involve the taking of depositions or extensive interrogatories" and the parties availed themselves of the court's

services only twice before the motion seeking arbitration was filed. *Id.* at 557, 544 S.E.2d at 645.

■ We find the facts in the present case more similar to those in *Liberty Builders.* In *Liberty Builders,* this court found evidence of prejudice where a party sought arbitration after engaging in litigation over approximately two and one-half years. *Id.* As in the case *sub judice,* the party seeking arbitration in *Liberty Builders* obtained information from an opposing party through discovery before seeking arbitration. *See Liberty Builders,* 336 S.C. at 666–67, 521 S.E.2d at 753. Here, Accent persisted with discovery by deposing Evans after making its motion to dismiss. Thus, we find evidence in the record that Accent availed itself of discovery tools unavailable in arbitration, thereby prejudicing Evans by obtaining information from her it might not have been able to otherwise obtain.

Moreover, Accent's prolongation of discovery necessitated Evans's pursuit of discovery, thereby forcing her to incur costs she would not have incurred in arbitration. Thus, we find evidence that Accent's continuation of discovery, rather than seeking arbitration in a timelier manner, prejudiced Evans by forcing her to incur discovery costs.

We further note that, during the pendency of a ruling on its motion to dismiss and compel arbitration, Accent could have sought the circuit court's protection under SCRCP 26(c)(1) from requirements that it engage in further litigation. As the party seeking arbitration, Accent bore the onus to halt discovery by seeking the court's protection. Instead, Accent failed to seek court protection and continued to engage in discovery to its benefit.

### CONCLUSION

We find abundant evidence in the record to support the circuit court's findings that Evans suffered prejudice resulting from Accent's discovery activities and delay in seeking arbitration. Accordingly, the decision of the circuit court is

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.