713 S.E.2d 799

**Lonnie J. DAVIS, Respondent,**

v.

**KB HOME OF SOUTH CAROLINA, INC. and Jeff Meyer, Appellants.**

**No. 4851.**

Court of Appeals of South Carolina.

Heard April 6, 2011.

Decided July 13, 2011.

Rehearing Denied Aug. 23, 2011.

118

D. Michael Henthorne and William K. Brumbach, III, both of Columbia and Stephen D. Dellinger, of Charlotte, for Appellants.

Allan R. Holmes, Sr., and A. Riley Holmes, Jr., both of Charleston, for Respondent.

GEATHERS, J.

In this wrongful termination case, KB Home of South Carolina, Inc. and Jeff Meyer[1] (collectively Appellants) appeal a circuit court judgment denying their motion to compel arbitration. On appeal, Appellants contend the circuit court erred in: (1) determining the validity of an arbitration clause contained in Lonnie Davis's employment application when that threshold determination was arguably for the arbitrator, (2) finding Appellants waived their right to enforce the arbitration clause by actively participating in litigation for eighteen months before seeking to compel arbitration, and (3) finding the alleged arbitration clause to be an unconscionable and unenforceable contract of adhesion. We affirm.

---

1. Jeff Meyer was the immediate supervisor of Lonnie Davis, the plaintiff in this action.

## FACTS/PROCEDURAL HISTORY

Davis applied for employment with KB Home on January 12, 2006. Davis's employment application contained an arbitration clause, stating as follows:

I understand and agree that *if employed, I will be required to arbitrate any disputes arising out of or related to my employment* with or termination from the Company, including any claims for discrimination, harassment, retaliation and/or wrongful termination. I understand that only an arbitrator, not a judge or a jury, will hear such disputes. I further understand that this term and condition of my employment may not be changed except by written agreement specifically for such purpose entered into between myself and the Company and signed by the President of the division or the Company's Sr. Vice President of Human Resources, and that such term and condition of my employment shall not be affected by any other employment policies or programs, in writing or otherwise, relating to other terms and conditions of my employment and that such policies and programs are subject to change at any time for any reason by the Company at its discretion and that I have no vested rights in any Company policy or program now or hereafter in effect.

(emphasis added). The employment application also stated "I understand that this application remains current for only 30 days." Davis signed the employment application underneath the following statement: "I certify that I have read, fully understand and accept all of the above terms."

On March 13, 2006, sixty days later, Davis was offered a position as the Vice President of Finance with KB Home. Davis signed an employment agreement containing a merger clause. The merger clause provided:

*Entire Agreement: This letter together with the documents referenced herein contain all of the agreements and understandings regarding your employment and the obligations of KB Home in connection with employment.* KB Home has not made, nor are you relying upon any oral or written promises or statements made by KB Home or any agent of KB Home except as expressly set forth herein. *This letter supersedes any and all prior agreements and understand-*

*ings between you and KB Home and alone expresses the agreement of the parties. This letter containing all of the agreements and understandings regarding your employ*ment can only be amended in writing by the Senior Vice President, Human Resources of KB Home.

(emphasis added).

KB Home terminated Davis on July 20, 2007. Davis subsequently brought a lawsuit against Appellants on March 3, 2008, for breach of contract, breach of contract accompanied by a fraudulent act, violation of the South Carolina Payment of Wages Act, wrongful termination/retaliation, and defamation. Davis claimed he was fired for reporting numerous infractions by KB Home employees, including various managers' demeaning and harassing conduct toward female employees as well as numerous fraudulent and unethical financial transactions in violation of the civil and criminal laws of South Carolina.

The parties engaged in discovery, filing multiple sets of interrogatories and requests for production of documents. Both Davis and Appellants produced documents and filed responses to the opposing parties' interrogatories. In addition, Appellants noticed and rescheduled Davis's deposition on five separate occasions. Appellants filed a motion to dismiss, which the circuit court heard and denied on January 9, 2009. A scheduling order was signed by the circuit court on April 30, 2009.

Davis filed a motion to compel discovery on July 13, 2009. Specifically, Davis suggested Appellants' responses to Davis's first set of interrogatories and requests for production were inadequate. On July 28, 2009, Appellants filed a motion for entry of a confidentiality order with respect to Davis's discovery requests. On August 5, 2009, Appellants filed a memorandum in response to Davis's motion to compel discovery. The parties consented to an amended scheduling order, which was signed on August 7, 2009.

In September of 2009, eighteen months after Davis filed his complaint, Appellants filed a motion to compel arbitration and to stay the proceedings. Davis filed a response to the motion to compel arbitration. Davis argued the merger clause in his subsequent employment agreement superseded the prior employment application containing an arbitration clause. Davis

further argued Appellants waived their right to seek arbitration by waiting eighteen months to file a motion to compel arbitration. Davis suggested the parties had engaged in extensive discovery, thereby giving Appellants an unfair advantage should the case go to arbitration. Finally, Davis argued the arbitration clause was an unconscionable contract of adhesion, and therefore unenforceable by an arbitrator.

The circuit court held a hearing on the motion to compel and denied the motion. The circuit court noted "[t]he reason for the denial is as set forth in [Davis's] memorandum, all of the reasons stated."[2] The circuit court issued a Form 4 judgment denying Appellants' motion to compel arbitration on October 30, 2009. Appellants did not file a motion to alter or amend pursuant to Rule 59(e), SCRCP. This appeal followed.

## ISSUES ON APPEAL

1. Is it for a court or an arbitrator to determine the threshold validity of an arbitration clause contained in Davis's employment application when a merger clause in the resulting employment agreement arguably superseded the application thereby rendering the arbitration clause invalid, and when the employment application stated it would expire after 30 days?

2. Did KB Home and Meyer waive their right to enforce the arbitration clause in Davis's employment application by actively participating in litigation for eighteen months before seeking to compel arbitration?

3. Is the arbitration clause an unconscionable and unenforceable contract of adhesion?

## STANDARD OF REVIEW

"Arbitrability determinations are subject to *de novo* review." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 22, 644 S.E.2d 663, 667 (2007) (emphasis added). "Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Id.* "The denial of a motion to compel arbitration, based on a

---

2. Davis's Memorandum in Opposition to the Motion to Stay and Refer to Arbitration was included as part of the Record on Appeal.

finding of waiver, is reviewed on appeal de novo." *Rich v. Walsh*, 357 S.C. 64, 68, 590 S.E.2d 506, 508 (Ct.App.2003).

## LAW/ANALYSIS

### I. Court versus Arbitrator

■ We first address the issue of whether it was proper for the circuit court, as opposed to an arbitrator, to address the threshold validity of the arbitration clause contained in Davis's employment application.

■ "Unless the parties have contracted to the contrary, the FAA [Federal Arbitration Act] applies in federal or state court to any arbitration agreement regarding a transaction that in fact involves interstate commerce, regardless of whether or not the parties contemplated an interstate transaction." *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538, 542 S.E.2d 360, 363 (2001). Neither party challenges the circuit court's application of the FAA to the employment agreement in the instant case. Therefore, this court need not address whether this contract qualifies as a transaction involving interstate commerce. See *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997) (stating that an unchallenged ruling, right or wrong, is the law of the case).

■ "[E]ven in cases where the FAA otherwise applies, general contract principles of state law apply in a court's evaluation of the enforceability of an arbitration clause." *Simpson*, 373 S.C. at 22 n. 1, 644 S.E.2d at 667 n. 1; *see also Munoz*, 343 S.C. at 539, 542 S.E.2d at 364 ("General contract principles of state law apply to arbitration clauses governed by the FAA."). Therefore, our analysis under South Carolina law is "ultimately the same" as the analysis under federal law. *Simpson*, 373 S.C. at 22 n. 1, 644 S.E.2d at 667 n. 1. Appellants contend *Simpson* is inapplicable to the present matter because it was governed by the South Carolina Uniform Arbitration Act (UAA), whereas the instant case is governed by the FAA. We disagree.

As the supreme court noted in *Simpson*, this distinction is insignificant as the UAA and FAA provisions at issue are nearly identical. *Compare* 9 U.S.C.A. §§ 2, 4 (West 2009),

*with* S.C.Code Ann. §§ 15–48–10(a), –20(a) (2005). The FAA provides: "The court shall hear the parties, and *upon being satisfied that the making of the agreement* for arbitration or the failure to comply therewith *is not in issue,* the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4 (West 2009) (emphasis added); *accord* S.C.Code Ann. § 15–48–20(a) (2005) (noting *"if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised* and shall order arbitration if found for the moving party, otherwise, the application shall be denied") (emphasis added).

■ "Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001); *see also* 9 U.S.C.A. § 2 (West 2009) (noting arbitration agreements subject to the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); 7 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 15:11 (4th ed. 1997) ("The usual principles and standards of interpretation applicable to other contracts are said to govern arbitration agreements.").

■ Arbitration clauses are severable from the contracts in which they are embedded. *S.C. Pub. Serv. Auth. v. Great W. Coal,* 312 S.C. 559, 563, 437 S.E.2d 22, 24 (1993); *The Hous. Auth. of City of Columbia v. Cornerstone Housing, L.L.C.,* 356 S.C. 328, 338, 588 S.E.2d 617, 622 (Ct.App.2003). Therefore, "the issue of [the arbitration clause's] validity is distinct from the substantive validity of the contract as a whole." *Munoz,* 343 S.C. at 540, 542 S.E.2d at 364. "[A] party cannot avoid arbitration through rescission of the entire contract when there is no independent challenge to the arbitration clause." *Great W. Coal,* 312 S.C. at 562–63, 437 S.E.2d at 24.

Appellants contend *Buckeye Check Cashing v. Cardegna,* 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), governs the outcome of the present case because Davis is challenging the existence of the entire agreement and not just the arbitration provision. *See id.* at 444, 126 S.Ct. 1204

(noting challenges to the validity of arbitration agreements can be divided into two distinct types: (1) specific challenges to the validity of the agreement to arbitrate, and (2) challenges to the contract as a whole). We disagree.

Davis does not suggest his entire employment agreement was invalid. Rather, Davis contests only the validity of the arbitration clause contained in his employment application in light of the subsequent employment offer letter, which contained a merger clause. Therefore, Davis's challenge is to the validity of the arbitration clause contained in his employment application. The employment application cannot be considered the entire employment agreement. We conclude Davis is making a specific challenge to the existence of the arbitration clause, and not a challenge to the entire employment agreement.[3] *Cf. Buckeye Check Cashing,* 546 U.S. at 445–46, 126 S.Ct. 1204 (noting that arbitration provisions are severable from the remainder of the contract, and when a party challenges the contract as a whole as opposed to specifically challenging the arbitration provision, the contract's validity is considered by the arbitrator in the first instance).

In addition, the arbitration clause in the instant matter did not expressly provide that any issues relating to the validity, existence, and scope of the arbitration agreement would be submitted to an arbitrator. Therefore, we hold the determination regarding whether a valid arbitration agreement existed was a "gateway matter" that the circuit court could properly consider. *Simpson,* 373 S.C. at 23, 644 S.E.2d at 668 (noting that certain "gateway matters" relating to the existence of an arbitration agreement are for the court to decide absent *"clear and unmistakable"* evidence to the contrary) (emphasis added).

---

**3.** During oral argument, Appellants contended this court is bound to reviewing the terms of the arbitration clause itself in determining its validity. We disagree. The South Carolina Supreme Court has looked outside the language of the arbitration clause to determine its enforceability. *See Simpson,* 373 S.C. at 27, 644 S.E.2d at 670 (noting the arbitration clause was unconscionable partly because Simpson did not possess the business judgment necessary to understand the implications of the arbitration agreement, and Simpson did not have a lawyer present when she signed the agreement).

## A. Merger Clause

■ Having concluded the circuit court properly considered Appellants' arguments, as opposed to submitting them to an arbitrator, we proceed to address the arguments on the merits. Appellants contend the circuit court erred in concluding that the provisions of Davis's employment application were superseded and rendered invalid by the presence of a merger clause in his subsequent employment agreement. We disagree.

■ To evaluate this argument, we look to South Carolina case law addressing merger clauses and contract interpretation. *Munoz,* 343 S.C. at 539, 542 S.E.2d at 364 ("General contract principles of state law apply to arbitration clauses governed by the FAA."). "Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *McGill v. Moore,* 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). "The court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Ellis v. Taylor,* 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994). "The court is without authority to consider parties' secret intentions, and therefore words cannot be read into a contract to impart an intent unexpressed when the contract was executed." *Pee Dee Stores, Inc. v. Doyle,* 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct.App.2009).

■ "The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." *Gilliland v. Elmwood Props.,* 301 S.C. 295, 302, 391 S.E.2d 577, 581 (1990); *see also* 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 33:1 (4th ed.1999) (explaining the parol evidence rule "prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, *or prior written agreements,* to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing") (emphasis added). The parol evidence rule is particularly applicable where the written instrument

contains a merger or integration clause. *U.S. Leasing Corp. v. Janicare, Inc.,* 294 S.C. 312, 318, 364 S.E.2d 202, 205 (Ct.App.1988).

■ "A merger clause expresses the intention of the parties to treat the writing as a complete integration of their agreement." *Wilson v. Landstrom,* 281 S.C. 260, 266, 315 S.E.2d 130, 134 (Ct.App.1984); *see also* 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 33:21 (4th ed.1999) (same); *Black's Law Dictionary* 880 (9th ed.2009) (defining an integration clause, also termed a merger clause, as "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract").

■ "The terms of a completely integrated agreement cannot be varied or contradicted by parol evidence of prior or contemporaneous agreements not included in the writing." *Wilson,* 281 S.C. at 266, 315 S.E.2d at 134. Furthermore, when the writing on its face appears to express the whole agreement, parol evidence cannot be admitted to add another term to the agreement, even when the writing is silent as to the particular term sought to be established. *U.S. Leasing Corp.,* 294 S.C. at 318, 364 S.E.2d at 205; *see also Blackwell v. Faucett,* 117 S.C. 60, 65, 108 S.E. 295, 296 (1921) (noting if the writing on its face appears to express the whole agreement, parol evidence cannot be admitted to add another term thereto).

By virtue of its express terms, the employment agreement at issue superseded any prior agreements. The employment agreement provided: "This letter together with the documents referenced herein contain all of the agreements and understandings regarding your employment and the obligations of KB Home in connection with employment." Neither the employment application nor the arbitration clause contained therein was referenced in the subsequent offer letter agreement. The agreement further provided: "This letter supersedes any and all prior agreements and understandings between you and KB Home and alone expresses the agreement of the parties."

 We conclude the merger clause was clear and unambiguous on its face.[4] In addition, the employment application at issue was executed two months prior to the employment agreement. Therefore, the arbitration clause in the application is not admissible to modify or add to the terms of the subsequent employment agreement containing a merger clause. *See Wilson,* 281 S.C. at 266, 315 S.E.2d at 134; *Blackwell,* 117 S.C. at 65, 108 S.E. at 296. KB Home could easily have referenced the arbitration clause contained in the employment application in its offer letter agreement, or reproduced identical arbitration-clause language in its employment offer agreement. KB Home chose not to do so, and this court must enforce the employment agreement according to its terms, regardless of its wisdom or folly. *See Ellis,* 316 S.C. at 248, 449 S.E.2d at 488 (noting a court must enforce an unambiguous contract according to its terms "regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully").

Appellants cite *Ramirez–Baker v. Beazer Homes, Inc.,* 636 F.Supp.2d 1008 (E.D.Cal.2008), to support their argument that a subsequent employment agreement does not operate to invalidate a prior arbitration clause. Under California law, parol evidence was properly admissible to prove the existence of an arbitration clause contained in an employment application when the subsequent employment agreement (signed five days later) was silent on the issue of dispute resolution. *Id.* at 1014, 1016–17. This evidence was admissible to modify the employment agreement even though the subsequent agreement contained a merger clause. *Id.*

We do not believe South Carolina law supports this conclusion. *See Blackwell,* 117 S.C. at 65, 108 S.E. at 296 (observing that if the writing on its face appears to express the whole agreement, parol evidence cannot be admitted to add another term, even when the agreement contains no language regarding that term); *U.S. Leasing Corp.,* 294 S.C. at 318, 364

---

4. Even if this court were to view the merger clause as ambiguous, any ambiguity must be construed against the drafter of the contract, in this case KB Home. *See Chassereau v. Global Sun Pools, Inc.,* 373 S.C. 168, 175, 644 S.E.2d 718, 722 (2007) ("[A] court will construe any doubts and ambiguities in an agreement against the drafter of the agreement.").

S.E.2d at 205 (noting when a writing on its face appears to express the whole agreement, parol evidence cannot be admitted to add another term to the agreement, *even when the writing is silent as to the particular term sought to be established*); *Wilson*, 281 S.C. at 266, 315 S.E.2d at 134 (noting that a merger clause expresses the parties' intention that the writing be treated as a complete integration of their agreement and that a completely integrated agreement cannot be varied or contradicted by parol evidence of either a prior or a contemporaneous agreement omitted from the writing).

While we recognize South Carolina law supports a policy favoring arbitration when a valid arbitration agreement exists, there is currently no exception to the merger clause rule in South Carolina for arbitration clauses in employment applications that are superseded by express language in a subsequent employment agreement. *See Munoz*, 343 S.C. at 539, 542 S.E.2d at 364 ("General contract principles of state law apply to arbitration clauses governed by the FAA."); *see also Zabinski*, 346 S.C. at 596, 553 S.E.2d at 118 ("Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.").

We affirm the circuit court's finding that the merger clause contained in the employment offer letter operated to supersede the arbitration clause contained in the employment application. Accordingly, there was no arbitration clause to enforce, and the circuit court properly denied the motion to compel arbitration.

### B. 30–day Expiration Clause

Appellants next argue that the arbitration clause was separate and distinct from the employment application, and therefore the 30–day expiration of the employment application did not apply to the arbitration clause contained therein. We need not address Appellants' argument regarding the 30–day expiration of the employment application because we hold the merger clause was valid and binding. Therefore, the merger clause served to negate any prior or contemporaneous agreements not included in the final document. *See U.S. Leasing Corp.*, 294 S.C. at 318, 364 S.E.2d at 205 (noting when a writing on its face appears to express the whole agreement,

parol evidence cannot be admitted to add another term to the agreement, *even when the writing is silent as to the particular term sought to be established); see also Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues on appeal when the resolution of a prior issue is dispositive).

## II. Waiver

■■■■ Appellants further argue the circuit court erred in finding they waived their right to enforce the arbitration clause by engaging in litigation for an eighteen-month period prior to filing a motion to compel arbitration. Specifically, Appellants argue Davis cannot demonstrate any prejudice from the delay, and mere inconvenience is insufficient to demonstrate prejudice. We disagree, and we affirm the circuit court's ruling on this alternative basis.

■■■■■ The right to enforce an arbitration clause may be waived. *Liberty Builders, Inc. v. Horton,* 336 S.C. 658, 665, 521 S.E.2d 749, 753 (Ct.App.1999). "In order to establish waiver, a party must show prejudice through an undue burden caused by delay in demanding arbitration." *Id.* "There is no set rule as to what constitutes a waiver of the right to arbitrate; the question depends on the facts of each case." *Id.* (internal quotation marks and citation omitted).

In *Rhodes v. Benson Chrysler–Plymouth, Inc.,* this court set out three factors a court generally considers when determining whether a party has waived its right to compel arbitration: "(1) whether a substantial length of time transpired between the commencement of the action and the commencement of the motion to compel arbitration; (2) whether the party requesting arbitration engaged in extensive discovery before moving to compel arbitration; and (3) whether the non-moving party was prejudiced by the delay in seeking arbitration." 374 S.C. 122, 126, 647 S.E.2d 249, 251 (Ct.App.2007). "To establish prejudice, the non-moving party must show something more than mere inconvenience." *Id.* at 127, 647 S.E.2d at 251 (internal citations and quotation marks omitted).

We first address whether a substantial length of time has passed between commencement of the action and the motion

to compel arbitration. South Carolina case law varies with respect to what constitutes a "substantial length of time." *Compare Evans v. Accent Manufactured Homes, Inc.,* 352 S.C. 544, 548, 575 S.E.2d 74, 75–76 (Ct.App.2003) (finding a nineteen-month period in which the parties exchanged written interrogatories and requests to produce and the party requesting arbitration took two depositions demonstrated waiver), *and Rhodes,* 374 S.C. at 125, 128, 647 S.E.2d at 250, 252 (finding a ten-month period in which parties exchanged written interrogatories and requests to produce and took five depositions was sufficient to demonstrate waiver), *with Toler's Cove Homeowners Ass'n, Inc. v. Trident Constr. Co.,* 355 S.C. 605, 612, 586 S.E.2d 581, 585 (2003) (finding a thirteen-month period in which discovery was limited in nature, the parties had not availed themselves of the court's assistance, and respondent had not held any depositions did not demonstrate waiver), *and Gen. Equip. & Supply Co. v. Keller Rigging & Constr., SC, Inc.,* 344 S.C. 553, 557, 544 S.E.2d 643, 645 (Ct.App.2001) (finding an eight-month period where the "litigation consisted of routine administrative matters and limited discovery [that] did not involve the taking of depositions or extensive interrogatories" did not establish waiver).

We conclude a substantial length of time has passed in the instant matter. Appellants waited eighteen months after Davis filed his complaint to file their motion to compel arbitration and stay proceedings. No other South Carolina case has found that a party did not waive their rights to compel arbitration after a year and a half of litigation.

Regarding the second factor, we further conclude the parties have engaged in extensive discovery. Both Davis and Appellants produced documents and filed responses to the opposing parties' interrogatories. Appellants noticed and rescheduled Davis's deposition on five separate occasions. Davis filed a motion to compel discovery on July 13, 2009. Appellants filed a memorandum in response to Davis's motion to compel discovery on August 5, 2009. All of the foregoing actions forced Davis to incur attorney's fees that would not have been expended in arbitration. Under the facts of this case, we hold Davis was prejudiced by the costs he incurred in discovery. *See Evans,* 352 S.C. at 551, 575 S.E.2d at 77 (holding defendant's continuation of discovery, rather than seeking arbitration in a timely manner, prejudiced plaintiff by

forcing her to incur discovery costs that would not have been expended in arbitration).

Lastly, we note the parties have availed themselves of the circuit court's assistance on several occasions. Appellants filed a motion to dismiss, which the circuit court heard and denied via a Form 4 judgment on January 9, 2009. Appellants filed a motion for entry of a confidentiality order with respect to Davis's discovery requests on July 28, 2009. An initial scheduling order was signed by the circuit court on April 30, 2009. Finally, the parties consented to an amended scheduling order, which was signed by the Chief Administrative Circuit Court Judge on August 7, 2009. Pursuant to the terms of the amended scheduling order, this case was subject to being called for trial on or after February 15, 2010.

Even if the arbitration clause in Davis's employment application had been valid and binding, we affirm the circuit court's denial of Appellants' motion to compel arbitration on the alternative basis that Appellants waived their right to enforce the arbitration agreement. Although the parties have not taken any depositions, a substantial length of time has passed, the parties have engaged in extensive discovery, and the parties have availed themselves of the circuit court's assistance on several occasions.

## III. Unconscionable Contract of Adhesion

Finally, Appellants argue the circuit court erred in finding the arbitration agreement was an unconscionable contract of adhesion. Because we hold the merger clause in the employment agreement nullified the existence of the arbitration clause contained in the employment application, we need not reach the merits of this issue. *Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (stating an appellate court need not address remaining issues on appeal when the resolution of a prior issue is dispositive).

## CONCLUSION

For all of the foregoing reasons, the decision of the circuit court is

**AFFIRMED.**

WILLIAMS and LOCKEMY, JJ., concur.