743 S.E.2d 868

Roger F. CARLSON and Mary Jo Carlson, Respondents,

v.

SOUTH CAROLINA STATE PLASTERING, LLC, Peter Conley, Individually, Del Webb Communities, Inc., and Pulte Homes, Inc., Defendants,

Of whom Del Webb Communities, Inc. and Pulte Homes, Inc. are the Appellants.

Appellate Case No. 2011–202907.

Nos. 5143.

Court of Appeals of South Carolina.

Heard April 3, 2013.
Decided June 12, 2013.

Robert L. Widener, of Columbia, and A. Victor Rawl, Jr., of Charleston, both of McNair Law Firm, PA, for Appellants.

W. Jefferson Leath, Jr. and Michael S. Seekings, both of Leath, Bouch & Seekings, LLP, of Charleston; John T. Chakeris, of The Chakeris Law Firm, of Charleston; and Phillip W. Segui, Jr., of Segui Law Firm, LLC, of Mount Pleasant, for Respondents.

WILLIAMS, J.

Del Webb Communities, Inc. (Del Webb) and Pulte Homes, Inc.[1] (Pulte) appeal the circuit court's order denying their motion to compel arbitration based on its finding that they waived any right to arbitration. We reverse.

## FACTS

On March 8, 2002, Roger F. Carlson and Mary Jo Carlson entered into a purchase agreement with Del Webb whereby they agreed to purchase a home in the Sun City development in Hilton Head, South Carolina. The purchase agreement contained the following arbitration clause:

> Any controversy or claim arising out of or relating to this Agreement or Your purchase of the Property shall be finally settled by arbitration administered by the American Arbitration Association in accordance with its Arbitration Rules for the Real Estate Industry and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
>
> . . .
>
> After Closing, every controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by binding arbitration as provided by the South Carolina Uniform Arbitration Act.

The deed to the home, which a representative for Del Webb executed on March 15, 2002, did not include an arbitration clause.

In September 2008, the Carlsons commenced the instant action against Del Webb and Pulte, alleging construction defects in their home's stucco siding. The Carlsons' case is one of about 140 cases currently pending against Del Webb and Pulte involving stucco-clad homes in the Sun City development. Del Webb and Pulte answered in December 2008 and asserted various defenses, including: (1) the alleged failure of the Carlsons to comply with sections 40–59–810 to –860 of the South Carolina Code (2011) (Right to Cure Act[2] or the Act),

---

1. Del Webb is a subsidiary of Pulte.

2. The Right to Cure Act requires claimants to give notice to a contractor ninety days before filing an action against the contractor arising out

and (2) that the Carlsons' claim was subject to mandatory arbitration.

In February 2009, the Carlsons sent Del Webb and Pulte a letter purportedly providing notice as required by the Right to Cure Act along with a proposed consent order staying the action to allow for compliance with the Act. Del Webb and Pulte responded with a letter requesting clarification of the defects as allowed by the Act. Del Webb and Pulte allege the Carlsons did not respond to the request.

In May 2009, the circuit court entered a consent order finding that the Carlsons filed the instant action without first complying with the requirements of the Right to Cure Act and staying the case until the Carlsons complied with the Act. The stay expired ninety days after it was entered. Del Webb and Pulte allege that, at a status conference in April 2010 addressing all 140 cases, they advised the circuit court that the two threshold issues to decide in the cases were the Right to Cure Act and arbitration. Also in April 2010, the Carlsons moved to amend their complaint to add class action allegations pursuant to Rule 23(a), SCRCP. Del Webb and Pulte opposed the motion, and the circuit court granted the motion on December 10, 2010. The Carlsons filed their amended complaint on December 29, 2010.

On May 24, 2010, Del Webb and Pulte filed a motion to dismiss based on noncompliance with the Right to Cure Act in a related case, *Amadeo v. South Carolina State Plastering, LLC, Peter Conley, Individually, Del Webb, & Pulte,* No. 09–CP–2904 (hereinafter, *Amadeo* case). The case was one of the 140 cases brought against Del Webb and Pulte alleging defective stucco on homes in the Sun City development. In the alternative, Del Webb and Pulte moved to stay the case and compel compliance with the Act.

---

of the construction of a dwelling. S.C.Code Ann. § 40–59–840 (2011). After receiving such notice, the contractor has fifteen days to request clarification of the alleged defects if the defect is not sufficiently stated. *Id.* Otherwise, the contractor has thirty days after receipt of such notice to "inspect, offer to remedy, offer to settle with the claimant, or deny the claim regarding the defects." S.C.Code Ann. § 40–59–850 (2011). If a claimant files an action in court before complying with the Right to Cure Act, upon motion of a party, the court shall stay the action until the claimant has complied with the Act. S.C.Code Ann. § 40–59–830 (2011).

In a status conference on July 13, 2010, the circuit court imposed a seventy-day briefing schedule to brief the Right to Cure Act issue. Del Webb and Pulte assert they again informed the court during this status conference that the two threshold issues to address were the Right to Cure Act and arbitration, and the circuit court indicated its intent to address the Right to Cure Act issue first.

In an order filed January 11, 2011, the circuit court denied Del Webb and Pulte's motion to dismiss in the *Amadeo* case. The circuit court noted that because it had not yet certified the class, the order technically only applied to the *Amadeo* case, but that "all parties are aware that there are multiple pending similarly situated civil claims."

Del Webb and Pulte moved to compel arbitration in the current action on February 14, 2011. In an order filed October 20, 2011, the circuit court denied the motion, finding that Del Webb and Pulte had waived the right to compel arbitration based on their delay in bringing the motion. This appeal followed.

## LAW/ANALYSIS

### I. Standard of Review

■ "In reviewing a circuit court's decision regarding a motion to stay an action pending arbitration, the determination of whether a party waived its right to arbitrate is a legal conclusion subject to *de novo* review. . . ." *MailSource, LLC v. M.A. Bailey & Assocs.*, 356 S.C. 370, 374, 588 S.E.2d 639, 641 (Ct.App.2003) (internal quotation marks omitted).

### II. Waiver

Del Webb and Pulte argue the circuit court erred in finding they waived their right to enforce the arbitration clause in the purchase contract by engaging in litigation for over two years before filing a motion to compel arbitration. Specifically, Del Webb and Pulte argue (1) the Carlsons did not suffer any prejudice as the result of the delay; (2) Del Webb and Pulte did not engage in any discovery before filing the motion; and (3) Del Webb and Pulte did not file the motion sooner because they were waiting on the resolution of the Right to Cure Act issue. We agree.

■ "The right to enforce an arbitration clause may be waived." *Davis v. KB Home of S.C., Inc.*, 394 S.C. 116, 131,

713 S.E.2d 799, 807 (Ct.App.2011). "In order to establish waiver, a party must show prejudice through an undue burden caused by delay in demanding arbitration." *Liberty Builders, Inc. v. Horton,* 336 S.C. 658, 665, 521 S.E.2d 749, 753 (Ct.App. 1999). "There is no set rule as to what constitutes a waiver of the right to arbitrate; the question depends on the facts of each case." *Id.* (internal quotation marks omitted).

█ This court has previously recognized three factors to consider when determining whether a party has waived its right to compel arbitration:

(1) whether a substantial length of time transpired between the commencement of the action and the commencement of the motion to compel arbitration; (2) whether the party requesting arbitration engaged in extensive discovery before moving to compel arbitration; and (3) whether the non-moving party was prejudiced by the delay in seeking arbitration.

*Davis,* 394 S.C. at 131, 713 S.E.2d at 807 (internal quotation marks omitted). "To establish prejudice, the non-moving party must show something more than mere inconvenience." *Id.* (internal quotation marks omitted). In addition to the above factors, this court has also considered the extent to which the parties have availed themselves of the circuit court's assistance. *See id.* at 133, 713 S.E.2d at 808.

█ Based on the above factors, we find the circuit court erred in denying Del Webb and Pulte's motion to compel arbitration. First, we acknowledge that a relatively substantial length of time transpired in the instant case between the commencement of the action and the commencement of the motion to compel arbitration. Specifically, the Carlsons commenced the instant action in September 2008, and Del Webb and Pulte did not file their motion to compel until February 2011, over two years after the filing of the complaint. Nevertheless, Del Webb and Pulte had raised the issue of arbitration since the inception of the action. The history of activity in the instant case indicates that the delay in filing the motion to compel was the result of the circuit court's decision to address the Right to Cure Act issue first and not because of any dilatory actions or tactics by Del Webb and Pulte.

Second, no discovery has occurred in the instant case. In its order, the circuit court relied in part on a list of more than

forty actions undertaken by Del Webb and Pulte in support of its ruling denying the motion to compel arbitration. However, the majority of the actions on the list were taken in other cases against Del Webb and Pulte. Although we recognize that similar cases are currently pending against Del Webb and Pulte, we find it would be inappropriate to consider actions undertaken in other cases for purposes of determining the extent of discovery that has been undertaken in the instant case. Accordingly, we find the lack of discovery conducted by Del Webb and Pulte weighs in favor of granting the motion to compel arbitration. *See Gen. Equip. & Supply Co. v. Keller Rigging & Constr., SC, Inc.*, 344 S.C. 553, 557, 544 S.E.2d 643, 645 (Ct.App.2001) (finding an eight-month period in which the "litigation consisted of routine administrative matters and limited discovery [that] did not involve the taking of depositions or extensive interrogatories" did not establish waiver).

Finally, due to the relatively limited amount of activity occurring in the instant case, the Carlsons will not be prejudiced by Del Webb and Pulte's delay in filing their motion to compel arbitration. Further, the record reveals the Carlsons were on notice from the inception of Del Webb and Pulte's involvement in the case that they would be seeking to compel arbitration. Aside from the mere passage of time, the Carlsons can point to no prejudice they will suffer as the result of Del Webb and Pulte's delay in moving to compel arbitration. Accordingly, we find this factor weighs in favor of granting the motion to compel arbitration. Based on the foregoing, we find the circuit court erred in denying Del Webb and Pulte's motion to compel arbitration.

## III. Unconscionability

The Carlsons argue as an additional sustaining ground that the purchase agreement, including the arbitration clause, is unconscionable and, thus, unenforceable.[3] We disagree.

 "General contract principles of state law apply in a court's evaluation of the enforceability of an arbitration clause." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14,

---

3. The Carlsons raised this argument and the following two arguments to the circuit court, but the court declined to rule on the issues because it denied the motion to compel arbitration based on waiver.

24, 644 S.E.2d 663, 668 (2007). "In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Id.* at 24–25, 644 S.E.2d at 668. In making this determination, courts must consider that "[t]he policies of the United States and this State favor arbitration of disputes." *New Hope Missionary Baptist Church v. Paragon Builders,* 379 S.C. 620, 630, 667 S.E.2d 1, 6 (Ct.App.2008). Accordingly, "[t]here is a strong presumption in favor of the validity of arbitration agreements." *Simpson,* 373 S.C. at 24, 644 S.E.2d at 668.

The Carlsons point to the *Simpson* case cited above in support of their argument that the arbitration clause in the purchase agreement was unconscionable. However, we find the facts of the instant case distinguishable. In *Simpson,* the supreme court found an arbitration clause in a contract involving the sale of an automobile to be unconscionable. *Id.* The court first determined that the purchaser had no meaningful choice in agreeing to arbitrate because (1) the contract she signed was an adhesion contract; (2) the arbitration clause was inconspicuous in the contract; and (3) the purchase was for a necessity. *Id.* at 26–28, 644 S.E.2d at 669–670. The court then determined that the arbitration clause was substantively oppressive and one-sided because it prohibited the recovery of punitive, exemplary, double, or treble damages. *Id.* at 28, 644 S.E.2d at 670. The court found this limitation on damages violated statutory law because it precluded the plaintiff from receiving mandatory statutory remedies under the South Carolina Unfair Trade Practices Act and the Dealers Act and undermined the statutes' purposes of punishing acts that adversely affect the public interest. *Id.* at 30, 644 S.E.2d at 671. In addition, the court found the arbitration clause's stipulation that the dealer could bring a judicial proceeding irrespective of any pending consumer claims requiring arbitration to be oppressive. *Id.* at 31–32, 644 S.E.2d at 672. Specifically, the court noted that this created the possibility of a scenario "in which a dealer's claim and delivery action is initiated in court, completed, and the vehicle sold prior to an arbitrator's determination of the consumer's rights in the same vehicle." *Id.* at 32, 644 S.E.2d at 672.

■ In contrast to the facts in *Simpson*, no evidence in the record indicates whether the purchase agreement was an adhesion contract, and the clause is clearly identified in the purchase agreement. In addition, the arbitration clause in the purchase agreement does not waive any rights or remedies otherwise available by law. Although the Carlsons point to other limitations in the purchase agreement, such as a provision limiting the statute of limitations for bringing claims to two years, these provisions are not part of the arbitration clause and are irrelevant to a determination of whether the arbitration clause is unconscionable. *See Davis*, 394 S.C. at 125, 713 S.E.2d at 804 (noting that arbitration clauses are severable from the contracts in which they are contained and, therefore, that the issue of the arbitration clause's validity is distinct from the substantive validity of the contract as a whole). Finally, the arbitration clause does not lack mutuality and applies to Del Webb and Pulte as well as the Carlsons. Based on the foregoing, we find the Carlsons' argument that the arbitration clause was unconscionable is without merit.

## IV. Merger

The Carlsons also argue as an additional sustaining ground that the doctrine of merger precludes arbitration of their claims. Specifically, the Carlsons argue that because the deed, which contained no arbitration clause, superseded the purchase agreement, their claims are not subject to arbitration. We disagree.

■ The merger by deed doctrine provides that "a deed made in full execution of a contract of sale of land merges the provisions of the contract therein." *Charleston & W. Carolina Ry. Co. v. Joyce*, 231 S.C. 493, 504, 99 S.E.2d 187, 193 (1957); *see also Wilson v. Landstrom*, 281 S.C. 260, 264, 315 S.E.2d 130, 133 (Ct.App.1984) ("A deed executed subsequent to the making of an executory contract for the sale of land supersedes that contract. . . ." (quoting *Charleston & W. Carolina Ry. Co.*, 231 S.C. at 505, 99 S.E.2d at 193)). However, agreements that are not intended to be merged in a deed are not merged into the deed. *See Hughes v. Greenville Country Club*, 283 S.C. 448, 450–51, 322 S.E.2d 827, 828 (Ct.App.1984). "[T]he party denying merger has the burden

of proving by clear and convincing evidence that merger was not intended." *Id.*

In the instant case, we find the parties did not intend for the arbitration clause to be superseded by the subsequently-executed deed. The purchase agreement in the instant case expressly provides, "The covenants, disclaimers and agreements contained in this Agreement shall not be deemed to be merged into or waived by the instruments executed at Closing, but shall expressly survive the Closing and continue to be binding upon both parties." In addition, the arbitration clause in the purchase agreement specifically states that "[a]fter closing, every controversy or claim arising out of or relating to this Agreement ... shall be settled by binding arbitration." Pursuant to the clear and unambiguous terms of the purchase agreement, clear and convincing evidence supports a finding that the parties did not intend for the arbitration clause to be merged into the deed at closing. Accordingly, this argument has no merit, and we decline to affirm the circuit court's order on this ground.

## V. Scope of Arbitration Clause

As a third additional sustaining ground, the Carlsons argue that because their claims arise in tort, they are not subject to the purchase agreement's arbitration clause because the clause only applies to claims arising in contract. We disagree.

"Arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *New Hope Missionary Baptist Church,* 379 S.C. at 627, 667 S.E.2d at 4. "A clause which provides for arbitration of all disputes 'arising out of or relating to' the contract is construed broadly." *Landers v. FDIC,* 402 S.C. 100, 109, 739 S.E.2d 209, 213–14 (2013) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Courts have held that such broad clauses "appl[y] to disputes in which a significant relationship exists between the asserted claims and the contract in which the arbitration clause is contained." *Id.* at 109, 739 S.E.2d at 214. "Thus, the scope of the clause does not limit arbitration to the literal interpretation or performance of the contract, but embraces every dispute between the parties having a significant relationship to the contract." *Id.* (altera-

tions and internal quotation marks omitted). Accordingly, the "court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 597, 553 S.E.2d 110, 118 (2001).

█ Based on the above standard, we find the Carlsons' tort claims fall within the scope of the arbitration clause in the instant case. The arbitration clause in the purchase agreement executed by the Carlsons applies to "every controversy or claim arising out of or relating to this Agreement, or the breach thereof. . . ." We hold the factual allegations underlying the Carlsons' claims have a significant relationship between the purchase agreement, such that the arbitration clause should be read to encompass the Carlsons' tort claims. The Carlsons' claims all arise from Del Webb and Pulte's allegedly defective construction of their home. The purchase agreement encompassed the parties' agreements regarding the construction of the Carlsons' home and includes Del Webb and Pulte's agreement to construct a home free from defective materials. Therefore, we find the arbitration clause in the purchase agreement was not intended to apply to claims arising in contract only and encompasses the Carlsons' tort claims as well. This conclusion is supported by recent case law in this state. *See, e.g., Landers,* 402 S.C. at 109–13, 739 S.E.2d at 214–15 (finding plaintiff's tort claims for slander and intentional infliction of emotional stress arising from his employment with the defendant were encompassed by an arbitration clause in his employment contract that requires arbitration for "any controversy or claim arising out of or relating to this contract, or the breach thereof"). Accordingly, we find this argument is without merit and decline to affirm the circuit court's decision on this ground.

## CONCLUSION

Based on the foregoing, we reverse the order of the circuit court denying Del Webb and Pulte's motion to compel arbitration.

**REVERSED.**

HUFF and KONDUROS, JJ., concur.