# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jonathan Mart, on behalf of himself and others similarly situated, Respondent,

v.

Great Southern Homes, Inc., Appellant.

Appellate Case No. 2018-001598

---

Appeal From Richland County
DeAndrea G. Benjamin, Circuit Court Judge

---

Opinion No. 6026
Heard April 5, 2021 – Filed September 13, 2023

---

## REVERSED AND REMANDED

---

Ronald L. Richter, Jr. and Scott Michael Mongillo, both of Bland Richter, LLP, of Charleston; and Eric Steven Bland, of Bland Richter, LLP, of Columbia, all for Appellant.

Charles Harry McDonald, of Belser & Belser, PA, of Columbia; Beth B. Richardson, of Robinson Gray Stepp & Laffitte, LLC, of Columbia; Terry E. Richardson, Jr., of Richardson, Thomas, Haltiwanger, Moore & Lewis, of Barnwell; Brady Ryan Thomas, of Richardson, Thomas, Haltiwanger, Moore & Lewis, of Columbia; and Matthew Anderson Nickles, of Rogers, Patrick, Westbrook & Brickman, LLC, of Columbia, all for Respondent.

---

**MCDONALD, J.:** Great Southern Homes, Inc. (GSH) appeals the circuit court's order denying its motion to dismiss and compel arbitration in this action brought by Jonathan Mart, individually and on behalf of other similarly situated homeowners.  Mart entered into a contract with GSH to purchase a custom-built home and later brought this action for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  Mart also seeks declaratory relief to address two questions: 1) the validity of GSH's contract provision requiring a home buyer to waive the implied warranty of habitability without separate consideration, and 2) the validity of GSH's effort to transfer its warranty obligations to a third party upon the closing of the transaction.[1]  Pursuant to our supreme court's holding in *Damico v. Lennar Carolinas, LLC*, 437 S.C. 596, 604–05, 879 S.E.2d 746, 751 (2022), *cert. denied*, 143 S. Ct. 2581 (2023), we reverse and remand for arbitration.

**Facts and Procedural History**

In July 2015, Mart contracted with GSH, a large builder and seller of new homes, to purchase a newly constructed home in the Longview North subdivision of Kershaw County.  GSH required Mart to execute its proprietary "Contract for Sale" (Sales Contract) containing a disclaimer of warranty rights, including the implied warranty of habitability.  In place of this implied warranty protecting new home buyers, GSH substituted an "Express Limited Warranty" (the Warranty) through a third party, StrucSure Home Warranty.

The header at the top of the Sales Contract states: "**<u>CONTRACT SUBJECT TO ARBITRATION (S.C. Code 15-48-10)</u>**."  (Emphasis in original).  The Sales Contract later provides in an unnumbered, standalone paragraph on page 3:

> **ARBITRATION:** Any dispute between the parties
> hereto arising out of this contract, related to the contract
> or the breach thereof, including without limitation,
> disputes relating to the property, improvements, or the
> condition, construction or sale thereof and the deed to be
> delivered pursuant hereto, shall be resolved by final and
> binding arbitration before three (3) arbitrators, one
> selected by each party, who shall mutually select the

---

[1] Mart has not alleged a construction defect or other problem with the house, nor has he asserted that GSH has defaulted on any warranty claim.

third arbitrator pursuant to the South Carolina Uniform Arbitration Act [(SCUAA)[2]].

Earlier in the document, in unnumbered paragraphs on pages 2 through 3, the Sales Contract addresses the Warranty:

LIMITED WARRANTY: The Seller shall furnish the Purchaser, at closing, with a limited warranty issued by a warranty company approved by the South Carolina Real Estate Commission. A sample copy of the warranty shall be available for inspection during reasonable business hours prior to closing at the offices of the Seller. This limited warranty shall warrant workmanship for One (1) year and warrant the structure itself for Ten (10) years from date of closing. Said limited warranty shall be incorporated in the deed delivered at closing. Purchaser acknowledges that said limited warranty is not a maintenance agreement. FOR QUALITY ASSURANCE PURPOSES WARRANTY VISITS MAY BE VIDEO W/AUDIO TAPED.

**This Limited Warranty issued to the Purchaser shall be in lieu of all other warranties, express or impli[e]d, any warranty of habitability, suitability for residential purposes, merchantability, or fitness for a particular purpose is hereby excluded and disclaimed. Seller shall in no event be liable for consequential or punitive damages of any kind. There is no warranty whatsoever on trees, shrubs, grass, vegetation or erosion caused by lack thereof, nor on subdivision improvements, including but not limited to, streets, road[s], sidewalks, sewer, drainage or utilities. Purchaser agrees to accept said limited warranty in lieu of all other rights or remedies, whether base[d] on contract or tort.**

The issuance of a certificate of completion or occupancy, or final inspection approval by any governmental entity

---

[2] S.C. Code Ann. §§ 15-48-10 to -240 (2005).

shall constitute certification of completion of the improvements in substantial conformity with the terms of this contract and shall also constitute a final determination, binding on the Parties hereto, that the properties are in full compliance with all applicable laws, regulations and building codes.

(Emphases in original).

Before the arbitration provision appears on page 3, paragraphs addressing termite protection, a radon notice, risk of loss, and default follow the limited warranty section of the Sales Contract.

Later, on page 4, the Sales Contract's "**Miscellaneous**" section provides, in pertinent parts:

> b. This Contract embodies the entire Agreement between Seller and Purchaser with respect to the property. No amendment or modification of this Contract (including Contracts for charges in construction 'extras') shall be valid unless contained in a writing executed by both parties.
>
> . . . .
>
> h. The provisions of this contract shall survive closing and not merge in the deed.

GSH also provided Mart with a "Warranty Service Acknowledgment" form (the Acknowledgment), stating "GSH provides a **limited** warranty on the original installation of the materials and workmanship (as defined by the SC Residential Construction Standards) of your home for the first year of occupancy from the date of closing." It describes issues not covered by the limited warranty and provides instructions for reporting a claim; Mart signed this Acknowledgement along with the Sales Contract on July 18, 2015. However, in an affidavit filed in opposition to GSH's motion to dismiss and compel arbitration, Mart noted GSH did not provide

the separate StrucSure Warranty until closing, five months after Mart signed the Sales Contract.[3]

At closing, Mart completed a "Home Enrollment Application" (the Application) through StrucSure Home Warranty, LLC. Pursuant to this document, Mart agreed "to resolve any claims, disputes, and controversies with the Builder [GSH], the Administrator, and/or the Insurer through binding arbitration and not litigation." Mart was charged a fee of $95 in conjunction with this Application.

The Warranty named StrucSure Home Warranty as "Warranty Administrator" and further provided:

> (1) This warranty is an insurance-backed, Express Limited Warranty provided to You by Your Builder. This warranty coverage booklet embodies the entire extent of the Express Limited Warranty.
>
> . . . .
>
> (10) This Express Limited Warranty is separate and apart from any contracts between You and Your Builder, including any sales agreements. It cannot be altered, affected or amended in any manner by any other agreement except only through a formal written agreement signed [by] the Builder, the Insurer, the Administrator, and You.
>
> . . . .
>
> (13) The Warrantor provides no warranties which extend beyond this document. All other warranties, express or implied, including, but not limited to, all implied warranties of fitness, merchantability, or habitability are

---

[3] GSH also gave Mart a "Home Sale Information Sheet" when it provided the Sales Contract and Acknowledgement. Mart claims this Information Sheet was the cover page for the Sales Contract. GSH disputes this, asserting the Information Sheet was not part of the Sales Contract and noting the Sales Contract contained the "appropriate statutory language" for arbitration. GSH further notes the Sales Contract was the first document it provided to Mart.

disclaimed and excluded to the extent allowed by law. The warranties established herein supersede all implied warranties.

The Warranty also contains its own, separate arbitration provision detailing the matters subject to its arbitration requirement:

> The parties to this Express Limited Warranty intend and agree that any and all claims, disputes and controversies by or between the Homeowner, the Builder, the Administrator, and/or the Insurer, or any combination of the foregoing, arising out of or related to this Express Limited Warranty, any alleged Defect and/or Deficiency in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including, without limitation, any claim of breach of contract, negligent or intentional misrepresentation, or nondisclosure in the inducement, execution, or performance of any contract, including this arbitration agreement, or breach of any alleged duty of good faith and fair dealing, shall be settled by binding arbitration in a manner consistent with this arbitration agreement. Agreeing to arbitration means You are waiving Your right to a trial by a judge and/or a jury.

The Warranty further notes the parties "shall mutually agree" on an arbitration service for submission and resolution of claims and, if no agreement can be reached, claims are submitted to Construction Dispute Resolution Services. The Warranty language specifies arbitration would be governed by the Federal Arbitration Act,[4] and requires Mart to cover the initial arbitration costs; thereafter, the arbitrator may award or apportion costs and fees.

The Warranty limits the maximum aggregate liability to the home's sale price and does not cover "special, incidental, indirect, or Consequential Damages and [does] not reimburse parties for their attorney's fees or costs." Should a Warranty provision be found void or in violation of law, the Warranty provides it will be "deemed modified to the extent necessary so that it is no longer void or in violation

---

[4] 9 U.S.C. §§ 1 to 307.

of law or public policy."  The Warranty outlines numerous potential issues that might arise with a home and notes appropriate "Builder Correction" remedies. Finally, the Warranty provides Mart with an avenue to appeal an arbitration decision.

GSH moved to dismiss Mart's complaint and to compel arbitration, relying upon the language of the arbitration clause in the Sales Contract.[5]  Following a hearing, the circuit court found the arbitration clauses in the Sales Contract and the Warranty both covered claims "arising out of or relating to" the Sales Contract and "these arbitration clauses are in conflict in numerous material respects."  Thus, the circuit court denied GSH's motion, concluding "there was no mutual assent between Mart and Great Southern as to any arbitration procedure; and, therefore, there was no meeting of the minds as to an agreement to arbitrate" claims arising out of or related to the Sales Contract.  GSH did not file a Rule 59(e), SCRCP motion but timely appealed.

**Standard of Review**

"Arbitrability determinations are subject to de novo review.  However, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings."  *Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 47–48, 790 S.E.2d 1, 3 (2016) (internal citation omitted).

---

[5] Although GSH cited in its motion the Sales Contract's provision providing arbitration would be conducted pursuant to South Carolina's Uniform Arbitration Act, it argued, "although the Contract itself identifies the South Carolina Uniform Arbitration Act, the Federal Arbitration Act preempts state law."  In support of its contention before the circuit court that the FAA governs any arbitration under the Sales Contract (or the Warranty), GSH provided the affidavits of two employees, along with purchase orders noting the implications of this transaction for interstate commerce.  Although Mart and GSH dispute whether Mart merely purchased a newly constructed home or had GSH build the home according to Mart's specifications, the Sales Contract describes the transaction as a "building job."  In its briefing to this court, GSH asserts "each contract has its own arbitration provision which provides for different methods of selecting arbitrators and other details such as the latter [Warranty] provides for arbitration under the FAA and the former [Sales Contract] under the South Carolina Uniform Arbitration Act."

**Law and Analysis**

**I.** *Damico* **and the Sales Contract's Arbitration Provision**

GSH raises several points challenging the circuit court's order, but the underlying inquiry boils down to whether the circuit court erred by incorporating the provisions of the Express Limited Warranty into the parties' Sales Contract when examining the parties' agreement to arbitrate pursuant to the independent arbitration agreement in the Sales Contract. GSH frames the question as "whether two separate contracts, each with a distinct purpose and related arbitration provision, can be conflated to produce a result of no arbitration whatsoever."

"Arbitration clauses are separable from the contracts in which they are imbedded." *Huskins v. Mungo Homes, LLC*, 439 S.C. 356, 366, 887 S.E.2d 534, 539 (Ct. App. 2023) (quoting *Hous. Auth. of Columbia v. Cornerstone Hous., LLC*, 356 S.C. 328, 338, 588 S.E.2d 617, 622 (Ct. App. 2003)). Whether an arbitration clause is valid "is distinct from the substantive validity of the contract as a whole." *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 540, 542 S.E.2d 360, 364 (2001). "Even if the overall contract is unenforceable, the arbitration provision is not unenforceable unless the reason the overall contract is unenforceable specifically relates to the arbitration provision." *Huskins*, 439 S.C. at 366, 887 S.E.2d at 539–40 (quoting *New Hope Missionary Baptist Church v. Paragon Builders*, 379 S.C. 620, 630, 667 S.E.2d 1, 6 (Ct. App. 2008)).

In considering the arbitration requirement in the Sales Contract, the circuit court incorporated the provisions of the separate Warranty document to ultimately find "there was no meeting of the minds as to an agreement to arbitrate claims arising out of and related to the Contract for Sale." Before we consider the merits of this finding, we note the relationship between the FAA and the parties' express contractual language in this transaction involving interstate commerce. In *Munoz*, our supreme court referenced the United States Supreme Court's acknowledgement in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468 (1989), that "parties are free to enter into a contract providing for arbitration under rules established by state law rather than under rules established by the FAA." *Munoz*, 343 S.C. at 538 n.2, 542 S.E.2d at 363 n.2. The *Munoz* court explained:

> The FAA preempts state laws that invalidate the parties'
> agreement to arbitrate "[b]ut it does not follow that the
> FAA prevents the enforcement of agreements to arbitrate

under different rules than those set forth in the [FAA] itself."  Such a result would be inimical to the FAA's primary purpose of ensuring that arbitration agreements are enforced according to their terms.

*Id.* (citations omitted); *see also Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 592, 553 S.E.2d 110, 116 (2001) ("While the parties may agree to enforce arbitration agreements under state rules rather than FAA rules, the FAA will preempt any state law that completely invalidates the parties' agreement to arbitrate."); *but see Hicks Unlimited, Inc. v. UniFirst Corp.*, Op. No. 28158 (S.C. Sup. Ct. filed June 14, 2023) (Howard Adv. Sh. No. 23 at 22) ("To the extent *Munoz v. Green Tree Fin. Corp.* and *Damico v. Lennar Carolinas, LLC* have been read as allowing parties to agree the FAA preempts South Carolina law without an accompanying demonstration the contract involves interstate commerce, we clarify now they do not.").

As noted above, we find our supreme court's decision in *Damico* governs our inquiry in this dispute.[6]  There, several homeowners in The Abbey subdivision in Berkeley County brought a construction defect suit against their homebuilder and general contractor, Lennar Carolinas, LLC.  *Damico*, 437 S.C. at 603, 879 S.E.2d at 750.  Lennar moved to compel arbitration, citing the provisions in a series of contracts signed by all but one of the homeowners when they purchased their homes.  *Id*.  As the court of appeals' *Damico* opinion explains, "[t]he circuit court denied the motion, finding the arbitration agreement included not just the arbitration section of the parties' sales contract but also sections from a separate warranty agreement (as well as parts of the deeds and covenants), and that the arbitration agreement was unconscionable."  *Damico v. Lennar Carolinas*, LLC, 430 S.C. 188, 194–95, 844 S.E.2d at 70 (Ct. App. 2020), *aff'd in part, rev'd in part*, *Damico*, 437 S.C. at 624, 879 S.E.2d at 762.  Due to this conflation of the various provisions, the court of appeals reversed the circuit court's denial of Lennar's motion to compel arbitration, concluding "the FAA, rather than the SCUAA applies, and the circuit court erred in not considering the arbitration section as an independent arbitration agreement."  *Id*. at 195, 844 S.E.2d at 70.  The court of appeals further found the FAA required enforcement of the valid agreement to arbitrate and concluded "the circuit court erred by considering the contract as a whole rather than, as *Prima Paint* demands, focusing on the discrete arbitration

---

[6] The United States Supreme Court denied Lennar Carolinas' petition for a writ of certiorari on June 5, 2023.  *Lennar Carolinas, LLC v. Damico*, 143 S.Ct. 2581 (2023).

provision." *Id*. at 199, 844 S.E.2d at 72; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (holding the validity of an arbitration agreement is considered separately from the substantive validity of the contract in which the arbitration provision is found; the court does not consider unconscionable terms outside of the arbitration provision).

Upon review of the homeowners' certiorari petition, our supreme court unanimously affirmed the portion of the court of appeals' *Damico* opinion finding "the circuit court impermissibly considered the terms found in the limited warranty booklet" when analyzing the arbitration provision of the purchase and sales agreement. *Damico*, 437 S.C. at 607–08, 879 S.E.2d at 753. However, the supreme court nonetheless agreed with the homeowner petitioners that Lennar Carolinas' sales contract's "arbitration provisions—standing alone—contain a number of oppressive and one-sided terms, thereby rendering the provisions unconscionable and unenforceable under South Carolina law." *Id.* at 604, 879 S.E.2d at 751. That is the distinction here: the arbitration provision in the GSH Sales Contract—standing alone—contains no such oppressive or unconscionable term. Challenged terms may be found elsewhere in the Sales Contract and/or the Warranty agreement, but controlling case law does not permit us to consider the language of the separate limited Warranty or the propriety of the waiver of implied warranties in analyzing the standalone arbitration language of the Sales Contract. *Cf. D.R. Horton*, 417 S.C. at 48–49, 790 S.E.2d at 4 (in which a majority of the court found the arbitration agreement itself broadly encompassed the entirety of the "Warranties and Dispute Resolution" section of the home purchase agreement).

The crux of Mart's complaint is that GSH's sales practice of seeking "a disclaimer of critical warranty rights implied by law in South Carolina and designed to protect the new homebuyer, who the law recognizes is at a significant disadvantage in sophistication and bargaining power with a large volume homebuilder such as Great Southern" is in itself unconscionable. And, while the circuit court's order did not address whether the specific terms of the Sales Contract's arbitration clause were unconscionable, Mart did not concede this point and raised unconscionability in his opposition to GSH's motion to dismiss and compel arbitration. But Mart's purported challenge to the standalone arbitration provision was merely an argument that the court "should read the [a]rbitration paragraph of the [Sales] Contract . . . in conjunction with the limitation on remedies provisions *contained under separate paragraphs* of the agreement." (emphasis added). This very argument illustrates the difference between the arbitration paragraph in the present case and the one in *D.R. Horton*. *See supra*. Mart was required to show that the language in the arbitration section alone was unconscionable. Because Mart did

not separately challenge the standalone arbitration provision in the GSH Sales Contract as unconscionable or as lacking material terms, we are handcuffed with respect to Mart's challenge of the validity of the waiver of implied warranties. *See, e.g., Doe v. TCSC, LLC*, 430 S.C. 602, 607, 846 S.E.2d 874, 876 (Ct. App. 2020) ("Because an arbitration provision is often one of many provisions in a contract covering many other aspects of the transaction, the first task of a court is to separate the arbitration provision from the rest of the contract. This may seem odd, but it is the law, known as the *Prima Paint* doctrine."); *One Belle Hall Prop. Owners Ass'n, Inc. v. Trammell Crow Residential Co.*, 418 S.C. 51, 62 n.6, 791 S.E.2d 286, 292 n.6 (Ct. App. 2016) ("In *Prima Paint*, the United States Supreme Court ruled that an arbitration agreement is separable from the contract in which it is embedded and the issue of its validity is distinct from the substantive validity of the contract as a whole.").

## II. Meeting of the Minds and Unconscionability

Because we agree with GSH that the circuit court erred in considering the terms of the Warranty—as opposed to the standalone arbitration provision in the Sales Contract—we need not further examine the circuit court's findings that the arbitration provisions of the two documents "directly and materially conflict with one another." However, "[t]he 'making' or formation of—in the sense of the very existence of—the agreement to arbitrate is always a question for the court, not the arbitrator." *Simmons v. Benson Hyundai, LLC*, 438 S.C. 1, 5, 881 S.E.2d 646, 648 (Ct. App. 2022), *cert. denied* (Mar. 30, 2023).

Here, the circuit court properly found South Carolina law requires a meeting of the minds as to all essential and material contract terms. *See Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989) ("South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement."). And, we look to South Carolina contract law to consider whether, as Mart asserts, there 1) was no meeting of the minds, or 2) the arbitration mandate "is unenforceable under South Carolina law because it violates S.C. Code § 15-48-10(a) and is unconscionable."[7] *See Simmons*, 438 S.C. at 7, 881 S.E.2d at

---

[7] The circuit court did not separately address Mart's argument that the arbitration clause is invalid under 15-48-10(a), perhaps because the court's "meeting of the minds" finding was dispositive. In any event, the required statutory language is found on the first page of the Sales Contract and even if it were not, where interstate commerce is involved, "the FAA will preempt any state law that

649 (holding that whether the parties have an agreement to arbitrate is decided applying South Carolina law, and the parties must "manifest a mutual intent to be bound").

In support of their respective positions, both parties cite to Judge Geathers' opinion in *York v. Dodgeland of Columbia, Inc.*, 406 S.C. 67, 749 S.E.2d 139 (Ct. App. 2013); the circuit judge noted *York* in her order as well.  In *York*, this court held the trial court did not err in finding the parties were bound by valid arbitration agreements applicable to their vehicle purchases "because each Appellant entered into an arbitration agreement that (A) complied with the Federal Arbitration Act (FAA); (B) evidenced intent to arbitrate; (C) was not unconscionable; and (D) was not void as against public policy."  *Id.* at 78, 749 S.E.2d at 145.

We find *York* supports GSH's position.  Although the circuit court correctly noted *York*'s acknowledgement that where the material terms of a contract are inconsistent and conflicting, there can be no meeting of the minds, we find no such inconsistency or conflict here.  The standalone arbitration provision in the Sales Contract contains no inconsistent or conflicting terms and, as noted above, it was error to incorporate the language of the separate Warranty document to find inconsistency.  Absent the inconsistencies noted in the circuit court's order, Mart's argument that there was no "meeting of the minds" cannot prevail.  Without some proof that the parties did not mutually assent to arbitration or a finding that the arbitration clause itself is unenforceable, the parties are bound by their agreement.

Finally, we note that as in *Damico*, while the Sales Contract here is certainly an adhesion contract, "a take-it-or-leave it contract of adhesion is not necessarily unconscionable, even though it may indicate one party lacked a meaningful choice. Rather, to constitute unconscionability, the contract terms must be so oppressive that no reasonable person would make them and no fair and honest person would accept them."  *Damico*, 437 S.C. at 612, 879 S.E.2d at 755 (internal citations omitted).  "The distinction between a contract of adhesion and unconscionability is worth emphasizing: *adhesive contracts are not unconscionable in and of themselves **so long as the terms are even-handed***."  *Damico*, 437 S.C. at 614, 879

completely invalidates the parties' agreement to arbitrate."  *Zabinski, supra,* 346 S.C. at 592–93, 553 S.E.2d at 116; *see also* S.C. Code Ann. § 15-48-10(a) (2005) ("Notice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital letters, or rubber-stamped prominently, on the first page of the contract and unless such notice is displayed thereon the contract shall not be subject to arbitration.").

S.E.2d at 756 (emphasis in original). The standalone arbitration clause here differs from those found unconscionable in South Carolina cases considering adhesion contracts between sophisticated builders and individual new home purchasers. *See, e.g.*, *Damico*, 437 S.C. at 615-17, 879 S.E.2d at 757–58 (finding, among other things, that Lennar's ability to ensure there was never "mutuality of parties" at arbitration by exercising its "sole election" to choose the parties would potentially force purchasers to litigate against subcontractors separately in circuit court, rendering the arbitration agreement "unconscionable and unenforceable as written"); *D.R. Horton*, 417 S.C. at 50, 790 S.E.2d at 5 (finding arbitration provision unconscionable and unenforceable where relief was left "to the whim of D.R. Horton while simultaneously allowing no monetary recuperation" when repairs were inadequate); *Huskins*, 439 S.C. at 369–71, 887 S.E.2d at 541–42 (finding unconscionable and unenforceable the final two sentences of an arbitration clause that effectively shortened the statutory limitations period to ninety days (or thirty days in certain circumstances) would "disproportionately affect the homebuyer's ability to bring a claim" but severing the offending language from the remainder of the arbitration clause and thus affirming as modified the circuit court's order compelling arbitration). Thus, to the extent the question of unconscionability is properly before this court, we find the standalone arbitration provision of the Sales Contract here is not unconscionable.

**Conclusion**

For the reasons stated, we reverse the order of the circuit court and remand this matter for arbitration.[8]

**REVERSED AND REMANDED.**

**KONDUROS and GEATHERS, JJ., concur.**

---

[8] Because we remand this matter pursuant to the arbitration provision of the Sales Contract, we need not consider GSH's remaining appellate issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating a court need not address remaining issues when another issue is dispositive).